## Pittsburgh and Lake Erie Railroad Company *versus* Robinson and Rea.

1. When a jury assess damages for the taking of lands by a corporation they are to value the property without reference to the person of the owner or the actual state of his business.

2. It was error to refuse to permit a railroad company, in an action to recover damages for taking lands of the plaintiffs for the construction of its road, to prove that a siding could be conveniently constructed upon the property of the plaintiffs, and to show how such construction might be made useful to the premises.

3. That the plaintiffs refused to avail themselves of the advantages which may have been afforded them by the road, is of no moment, for the question is not as to the disposition of the owners of the property, but whether or not the facilities afforded by the improvement have advanced the market value of the property.

4. Under our Acts of Assembly the owners of mills and manufactories may of right connect their private sidings with the railroads in their vicinity, and the fact that such right exists in them may largely advance the market value of their property and affect the question of damages for taking a part thereof for railroad purposes.

5. In mitigation of damages a railroad company may show that it is practicable to make switch connections with a railroad which crosses the land of claimant for damages.

6. While the general advantage resulting as well to the public as to the property, which is the subject of assessment, is not to be considered in estimating the benefits to that property, yet anything and everything connected with the general improvement which tends to increase its value or usefulness to such property may be considered.

7. Though the knowledge of a witness of the value of lands in the neighborhood may have rested solely upon a few purchases made by the railroad company, and from no other sales or purchases in the real estate market, he has some knowledge upon which to base an opinion and the value of that opinion is for the jury.

October 12th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county* : Of October and November Term 1880, No. 168.

In the court below this was an appeal from an award of viewers under the General Railroad Act. The Pittsburgh and Lake Erie

Railroad Company was incorporated under an Act of Assembly, approved the 4th of April 1868. In constructing its road it was found necessary to pass through a large area of private property, among which was that of the plaintiffs, who are the owners of a lot of ground situated in the city of Pittsburgh, and fronting on the Monongahela river, and extending thence to Carson street, and having a breadth of 170 feet, upon which is erected their manufacturing establishment, known as the "Washington Works." The railroad company, in constructing their road, found it necessary to make a cut, 30 feet wide and 8 feet deep, through the lot of the plaintiffs below, in order that a proper grade might be maintained. The plaintiffs claimed to have been damaged to the extent of $50,000, by such cut being made through their said lot.

As the defendants are subject, under the terms of their charter, to the provisions of the General Railroad Law of 1849, the plaintiffs presented their petition to the Court of Common Pleas, asking the court to appoint viewers and assess their damages. The court appointed the viewers as prayed for, who found the value of the land taken at $6500. This report was filed April 7th 1879, and duly confirmed. An appeal was taken by Robinson, Rea & Co., from the report of the viewers to the Court of Common Pleas. The case came on for trial March 24th 1880, before Stowe, P. J.

The defendants offered the testimony of J. R. McCullough as to the practicability of constructing a switch or siding on plaintiffs' property, for the purpose of showing that the railroad, as constructed through the property, may be utilized in the usual manner by the construction of an ordinary switch or siding such as is made in all manufacturing establishments on that line. To be followed by the testimony of the witness that it is the standing rule of the company that, whenever application is made by manufacturing establishments for a switch, it has been their custom always to put it in at once, and that they have done so at all other establishments where application has been made.

Objected to and objection sustained. (2d assignment of error.)

Defendants also proposed to show by this witness and others, that, prior to the construction of this railroad, it cost so much per ton to transport raw and manufactured material to and from the point of shipment; that by the construction of this road and the building of a switch, such as it is practicable to construct on the property of the plaintiffs, if they desire to avail themselves of the advantages of this road, it would be a great saving to them in the line of transportation, and in this manner a great benefit to their property.

The purpose of the offer was to show the distinct benefit to this property to arise from the construction of the road through the property in order to reduce the claim of damages that has been

[Pittsburgh and Lake Erie Railroad Co. *v.* Robinson.]

shown on the other side, none of the witnesses on the other side having stated that they took into consideration the question of benefit to this property, but only the damage; to be followed by the testimony of witnesses as to the value of the whole.

Also, the following on same point: To prove by the witnesses on the stand and other witnesses, that prior to the construction of this railroad, the nearest point of shipment by rail, for use of plaintiffs, was at the Fort Wayne depot, at Penn street, Pittsburgh, or at the Pennsylvania Duquesne depot; that by the construction of this road and the location of its depot at a point a few hundred feet distant from the manufacturing establishment of plaintiffs, the cost of transportation of the raw and manufactured material to and from such point of shipment can be largely reduced, and in this way the road of defendant company be a special benefit to the property of plaintiffs. This for the purpose of reducing plaintiff's damages. (3d assignment.)

Defendant also proposed to ask witness, Mr. John G. Robinson, the value of the piece of ground taken for right of way over the property of Robinson, Rea & Co., per square foot.

Objected to as incompetent and irrelevant, for the reason that the witness has no knowledge of the value of land in the neighborhood, other than that derived, as he has stated in his former answer, by paying for property in several instances bought by the Pittsburgh and Lake Erie Railroad.

By the court. The witness has not shown that he has any knowledge other than by sales referred to in his testimony, and, therefore, we think the evidence offered incompetent and irrelevant. Objection sustained.

Also: To ask witness whether he has knowledge of the selling price of ten distinct pieces of property, representing distinct owners, in the neighborhood of the property of the plaintiffs, intersected in like manner by the railroad of the defendant company. This offer for the purpose of showing that the witness is competent to fix the value of the land of the plaintiffs.

Objected to as incompetent and irrelevant, for the reason that the preceding examination of the witness has shown that he has no knowledge of the value of land, save and except having paid for properties purchased by the Pittsburgh and Lake Erie Railroad Company, and as incompetent and irrelevant.

Objection sustained. (4th assignment.)

The third point of the defendant, with the answer of the court, was as follows:

3. That the defendant company is a common carrier; that its railroad is a public highway; that the plaintiffs have a right in law to construct on their land, adjoining said railroad, a suitable switch for the uses of their business, and connect the same with the tracks of the defendant company, subject to the general rules of said com-

[Pittsburgh and Lake Erie Railroad Co. *v.* Robinson.]

pany regulating such connections ; and that the defendant company is bound to receive and deliver to and from such switch or siding, cars and freight for the said plaintiffs to and from such points, on the line of defendant's railroad, as may be designated by plaintiffs, and on equal terms with all other individuals or transportation companies.

Ans. " This point is refused. There is, undoubtedly, much in the point that is correct, as a rule of law, but taking it as a whole, and for the purpose for which it is presented in this case, to wit, as a set-off to the damage done complainant by taking of their property by defendant company, we think the point not well taken."

Verdict for plaintiffs for $16,350. A new trial was refused and judgment entered on the verdict, when defendant took this writ and alleged that the court erred as set forth in the above assignments of error.

*J. H. McCreery*, for plaintiff in error.—By the construction of the siding the value of the property as a manufacturing site would be enhanced sufficiently to compensate for the damage done by taking the right of way. But the court below by holding that the owners of the property could not utilize the railroad unless the company were willing, precluded our showing the advantages to the property by the construction of the road. We contend that this was error, and that under the law the owners of the property could use the road by means of a switch, whether the company was willing or not : Acts of April 16th 1838, Pamph. L. 464 ; March 28th 1840, Pamph. L. 196 ; March 13th 1847, Pamph. L. 337 ; February 19th 1849, Pamph. L. 79. If we could show, as a substantive fact, that, by the difference in cost of transportation, the plaintiffs would save in their business $5000 per year, we would have the right to have it offset as against the loss to them by employment of additional men, and the same rule which allowed the plaintiffs to prove distinct items of damage, as well as a total, if applied to defendant company, certainly should admit our items of proof as suggested in the offer contained in the third assignment of error. It is competent to prove the value of property by the opinion of witnesses, derived from knowledge of actual sales in the neighborhood.

*Hampton & Dalzell*, for defendants in error.—The proposition is, can a railroad company enter upon and appropriate the land of a citizen, and pay for the whole or any part of the damages done by setting up the fact that, by the construction and use of a siding or any other contrivance on his land benefits will likely result in its future use, and thereby the damages will, in whole or in part, be reduced ? In the language of the court, can the damages actually done be "set-off" by imaginary benefits ? In estimating

[Pittsburgh and Lake Erie Railroad Co. v. Robinson.]

the advantages, such only as are special and peculiar to the property in question are to be considered, and not such as are common to the public. The special and peculiar advantages must be such, in fact, as result directly from the construction of the road, and are at once appreciable and not dependent upon the future conduct of the owner of the land in using the railroad. As no compensation can be recovered for consequential or speculative damages, so no offset can be claimed by the company taking the land for speculative advantages: Hornstein v. Atlantic and Great Western Railroad Co., 1 P. F. Smith 90; Sunbury and Erie Railroad Co. v. Hummell, 3 Casey 99; Patten v. Northern Central Railroad Co., 9 Id. 426; Robbins v. Milwaukee and Horicon Railroad Co., 6 Wis. 610. The benefits proposed to be shown were not special to the works of the plaintiffs, but such as the public generally might enjoy from using the road. But the offer was further clearly obnoxious to the objection that the benefits were made to depend solely upon the fact whether the plaintiffs used the road. The idea of reducing the damages upon such a contingency can certainly have no weight. The only proper test of damages is the opinion of witnesses as to the value of the land taken, in view of its location and productiveness, its market value or the general selling price of land in the neighborhood; evidence of particular sales, under special circumstances, is inadmissible: East Pennsylvania Railroad Co. v. Heister, 4 Wright 53; Pittsburgh, Virginia and Charleston Railroad Co. v. Rose, 24 P. F. Smith 362.

Mr. Justice GORDON delivered the opinion of the court, November 8th 1880.

Where a jury, as in the case in hand, are called upon to assess damages on account of the taking of lands by a corporation, they are, as is said by GIBSON, J., in the case of The Schuylkill Navigation Company v. Thoburn, 7 S. & R. 441, to value the property without reference to the person of the owner, or the actual state of his business; and in doing that the only safe rule is, to inquire what the property, unaffected by the obstruction, would have sold for at the time the injury was committed, and what it would sell for as affected by the injury, and the difference is the true measure of compensation. In Hornstein v. Atlantic & Great Western Railroad Co., 1 P. F. Smith 87, the doctrine above stated is repeated, and it is said, per curiam: "In estimating the damages resulting from the road, consequential or speculative damages are to be rejected, and in estimating the advantages such only as are special or peculiar to the property in question are to be considered, and not such as are common to the public."

Without going further for authority, these cases furnish all the elements necessary for the determination of the present controversy. Considering only the advantages and disadvantages, special

[Pittsburgh and Lake Erie Railroad Co. *v.* Robinson.]

and peculiar, resulting to the plaintiffs' property, by reason of the introduction of the defendants' road upon it, what was the difference in its value in the real estate market, before and after the building of that road ? The resolution of this question solves the proposed problem. The property in question is used for manufacturing, and, ordinarily, the market values of such properties are advanced by the introduction of railroads; this fact is one upon which the jury must pass, for much depends upon the situation of the property and the accessibility of the road which traverses it. If that road is carried through it on an embankment so high, or in a cut so low that it cannot be reached by a switch, it is useless to the property ; on the other hand, if the road is on grade, or nearly so, that by a siding or switch it may be made useful and convenient for the purposes for which the property is used, the value of that property may be greatly enhanced thereby. How, then, can any one reasonably contend that either of the above supposed conditions may not be given in evidence ? We have no hesitation in saying that the court below was wrong in refusing to permit the defendant to prove that a siding could be conveniently constructed upon the property of the plaintiffs, and to show how such a construction might be made useful to the premises. That the plaintiffs refused to avail themselves of the advantages which may have been afforded them by the road, is, as we have seen, of no moment, for the question is not as to the disposition of the owners of the property, but whether or not the facilities afforded by the improvement have advanced the market values of the property.

As immediately connected with the above stated proposition, we are also of opinion that the plaintiffs' third point should have been affirmed. It is conceded that, under our Acts of Assembly, the owners of mills and manufactories may of right connect their private sidings with the railroads in their vicinity, and though, as the counsel for the defendants in error says, it does not follow that such owners may ever avail themselves of such right, nevertheless the fact that such a right exists in them may largely advance the market value of their several properties. Certainly privileges which may be used to facilitate transportation to and from large factories must have some effect upon their values.

Again, the court refused the offer of the defendant to show that it had so built its depot as to be convenient to the plaintiffs' works. In this we think there was error. Let us put the case from the other side and suppose the depot to be placed at such a distance from the plaintiffs' land, or at such a place as to render it useless to their works, it follows that unless they have some other means of access, the railroad, as to them and their property, is utterly worthless, and from it no advantage could accrue that would form an offset to the damages suffered. Now who will undertake to say that a landowner could not show a condition of things such as this

[Pittsburgh and Lake Erie Railroad Co. *v.* Robinson.]

before a jury summoned to inquire into and assess the damages he may have suffered? But if he may show these things the railroad company may show the converse; that it has furnished suitable and convenient depots and other conveniences, and that the lands which are traversed by its road are thereby benefited and improved.

True, a depot is designed for the public benefit, but *non constat* that the plaintiffs' lands may not be specially benefited thereby. The very same thing may be said of the whole road, of which the depot is part, and yet it is the whole road, and not merely that part which happens to lie on the private property alleged to be damaged, which gives to it that peculiar or special value which is the subject of set off. It hence follows that while the general advantage, resulting as well to the public as to the property which is the subject of assessment, is not to be considered in estimating the benefits to that property, yet any and everything connected with the general improvement, which tends to increase its value or usefulness to such property, may be considered.

The testimony of John G. Robinson, as to the value of the premises under consideration, ought to have been admitted. Though his knowledge of the value of lands in that neighborhood may have rested solely upon a few purchases made by the railroad company, and from no other sales or purchases in the real estate market, yet he had some knowledge upon which to base an opinion, and the value of that opinion was for the jury.

Judgment reversed, and a *venire facias de novo* awarded.