## READING & POTTSVILLE R. CO. v. BALTHASER.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 2, 1888—Decided April 2, 1888.

1. In proceedings for the recovery of damages from the location and construction of a railroad, though the character of the land as mineral land is a proper subject for consideration by both witnesses and jury in estimating the damages, yet it is error to admit in evidence an estimate of the specific value of the mineral beneath the appropriation, either to recover the value of the mineral itself, or as an element in determining

the market value of the land: Searle v. Railroad Co., 33 Pa. 64, approved.

2. In such a cause, while the fact, that additional facilities for the transportation of the products of the land are afforded by the railroad, may be proved by the company as an element of advantage, yet, as rates of transportation are not permanent but fluctuating, an offer to show a reduction of such expenses by evidence as to specific rates prevalent at a particular time between particular points is inadmissible: P. & L. E. R. Co. v. Robinson, 95 Pa. 426, distinguished.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and CLARK, JJ.; TRUNKEY and WILLIAMS, JJ., absent.

No. 110 January Term 1888, Sup. Ct.; court below, No. 47 November Term 1885, C. P.

On February 27, 1886, in an appeal from a report of viewers in a proceeding to assess damages to land instituted in the court below by Mary Balthaser, widow, Frank Balthaser, and others, children and devisees of William Balthaser, deceased, against the Reading & Pottsville Railroad Company, now the Pennsylvania Schuylkill Valley Railroad Company, an issue was directed under the form of an action in assumpsit, to be tried under the plea of non assumpsit, without further pleadings, the land-owners as plaintiffs and the railroad company as defendant therein.

At the trial on April 18, 1887, the plaintiffs showed title to a tract of about 37 acres, upon which was a deposit of soft limestone. Quarries had been operated for several years, and the stone removed to a depth of 40 or 50 feet. About 4 acres of the stone were left. It was claimed that the chief value of the tract was in those four acres, and that the location and construction of the defendant's road in May, 1885, had occupied about 1.8 acres thereof, the road running in a cut of 11 feet through the deposit.

After testimony on the part of the plaintiff as to the character of the land and the purposes for which it was used, the increased difficulties of mining and the delivery of stone and lime, Walter W. Balthaser testified that he made the difference in the market value of the tract immediately before and immediately after the railroad was located to be about $12,000:

By Mr. Ruhl, for plaintiffs: Q. If you can, you may state how you make up the items? A. They are made up by the stone which they take—

By Mr. Derr, for defendant: Q. What do you mean by "the stone which they take?" A. The land which it occupies has stone underneath, and it is occupied by the railroad, taken by this railroad.

Mr. Derr: Objected to. Defendant moves to strike out this testimony with regard to the deposit of stone, for the reason that there is no reasonable way in which a value can be placed upon it; it would have to be known, in the first place, when the plaintiffs proposed to take it out; what they were going to use it for, whether for burning lime, for furnace use, or any other use; moreover, the market price at the time of mining, the cost of labor, and of transportation, and other elements of computation, would have to be known.

The court declined to strike out the testimony, noting that the objection was to be taken as having been made in time and of the same effect as if made before the question was answered.[1]

The witness on cross-examination testified that in his estimate of $12,000 he had taken into account how many tons of stone were under the railroad appropriation and put a value on them at so much per ton.

Other witnesses, on the part of the land-owners, embraced in their estimates the value of the stone beneath the defendant's appropriation, as an element of damages.

Joseph W. Day, a freight agent of the Penn. R. Co., called for the defendant, testified as to the connections of the defendant's road, and that it connected the Pennsylvania system with the Lehigh Valley system. Q. Can you tell us what is the freight on lime between Leesport and Hamburg? Objected to as immaterial and irrelevant.

Mr. Hiester: The witness Balthaser has given us freight rates from this property, from Leesport to Hamburg at 56 cents a ton; he has also stated that our railroad is of no benefit to his property and likely to prove of no benefit to his property, because the freight on lime was greater between Leesport and Hamburg on our road than the freight on the Philadelphia & Reading Railroad; the purpose of this question is to contradict that witness, in the first place, on material points in the case; and in the second place, to show a probable advantage accruing to this property from a decreased rate of freight for the product of the property. Objected to.

Mr. Derr: It is now proposed by the defendants to show that at and prior to the time of the opening of their railroad between the plaintiffs' property and Hamburg the rates of freight over the Philadelphia & Reading Railroad for the carriage of lime from the plaintiffs' property to Hamburg were as follows: Fifteen cents per ton from the plaintiffs' property to Leesport and 56 cents per ton from Leesport to Hamburg; that at the time of the opening of defendants' railroad their rates from the plaintiffs' property to Hamburg were only 60 cents a ton, or 11 cents less than the rate from the Philadelphia & Reading Railroad; and that since the opening of the defendants' railroad the freight rates have been lowered to 48 cents a ton; and that the lowering of the freight rates was a consequence of the construction and opening of the defendants' competing line of railroad. The purpose of the offer is to show the benefits that have already accrued to the plaintiffs' property, illustrating the effect of the opening of the competing line of railroad between the two points and showing to the jury what benefits and advantages are likely to be derived by the plaintiffs' property and owners thereof in the future; and also for the purpose of contradicting Mr. Balthaser, who in his testimony declared that he had inquired, and that the freight rates from Leesport to Hamburg were higher on the defendants' railroad than on the Philadelphia & Reading Railroad.

Mr. Ruhl: Objected to by the plaintiffs; first, as to the contradiction of Mr. Balthaser, they did not ask him as to any particular time, nor is it now proposed to prove at what time the rates were different from those testified to by him, as from information received, as he testified. It is further objected to, because there is no testimony in the cause which shows or tends to show that the plaintiffs at any time shipped lime to Hamburg either by the Philadelphia & Reading Company's line or any other. And still further, because it is not proposed to show that these rates will continue, or will be a permanent advantage, or that the advantage which is claimed in the offer would be special to this property. It is irrelevant, immaterial and incompetent testimony.

The court: As to the time when the witness referred to stated that the rates were higher on this road than on the

Philadelphia & Reading Railroad, the defendants may recall Mr. Balthaser.

Walter W. Balthaser was then recalled for further cross-examination and testified that in the spring of 1886 he had inquired of the Pennsylvania station agent at Leesport as to the rates of freight from Leesport to Hamburg over the defendant company's road and found them to be higher than they were over the Philadelphia & Reading road.

Then the plaintiffs objected further to the offer that it was not proposed to show the cost of conveying lime from the plaintiffs' tract to Leesport, which would be the nearest point they would have for shipping on the new road.

The offer was then overruled.[3]

The court, HAGENMAN, P. J., charged the jury and answered the points presented as follows:

This action is brought by Mary Balthaser, the widow of William Balthaser, deceased, and the children of William Balthaser, deceased, against the Reading and Pottsville Railroad Company, now the Pennsylvania Schuylkill Valley Railroad Company, for the purpose of recovering damages which they allege this property has sustained by reason of the construction of a railroad over it. It seems that on May 23, 1885, this railroad company went upon this property for the purpose of constructing their railroad, and that they have constructed a railroad over it; and that in the construction of the railroad have taken 1,807 acres of land. The plaintiffs' claim is for damages for the construction of this railroad over their property. You have been upon the property; you have seen how the railroad runs through it; and your duties are the same as those of a jury of view, and the same law that governs a jury of view for the assessment of damages will govern you in finding a verdict. . . . . .

In order to estimate the damages which may be sustained, the Supreme Court has settled by numerous decisions that the true measure of damages for lands taken for railroad purposes is the difference between the market value of the land before the railroad was constructed over it and after the railroad is constructed. . . . . .

It is claimed upon the part of the plaintiff that this property

Charge of Court below.

is valuable, not simply for farm land, but in consequence of the limestone that is on it. The Supreme Court have also said that if the property by reason of its location or otherwise is especially adapted to any particular use to which it is applied; if it is more valuable for that particular use than for any other, its market value will be measured accordingly.

Several points have been submitted by the plaintiffs, to which I will refer before I refer to the evidence. The plaintiffs have asked us to say:

1. In estimating the benefits to be set off against damages, the jury should allow only for special advantages, if any, peculiar to this tract caused by the construction of the road, and should not allow for any benefits which this property may share in common with all others in the neighborhood resulting from the road.

Answer: This point is affirmed.

2. In assessing damages to plaintiffs in this case, the risk of fire following the proper and lawful use of the road must be taken into consideration by the jury, and also the increased burden imposed upon the land by reason of increased fencing which may be required.

Answer: This point is also affirmed.

3. The jury should consider, in estimating the value of the property, the use which was made of it by plaintiffs before the railroad was located across it.

Answer: This point is also affirmed.

The defendant has also submitted three points, two of which I will answer at this point, and reserve the first until after I shall have adverted to the evidence, because it has more special reference to a particular part of the evidence which was submitted by the plaintiffs. That point relates to the limestone, or stone occupied by the road-bed. The other points are as follows:

2. The jury will have to allow defendant credit for all advantages which may have resulted, or which may seem likely to result, to the plaintiffs from the location and construction of said railroad.

Answer: This point is affirmed; but the advantages must be such as are special and peculiar to this property.[4]

3. If the jury believe that by reason of the reduction in

Charge of Court below.

freight rates, facilities for shipment, or the extension of the plaintiffs' market for the sale of the product of their quarries and lime kilns, the plaintiffs' property taken as a whole was and is in consequence worth as much in the market since the construction of the defendant's railroad as it was before, then the verdict must be for the defendant.

Answer: This point is affirmed.

The jury will understand the rule of law better if I give it to them in different words from that which is given in the law books. The jury will consider from the evidence what this property was worth in the market immediately before the railroad was located over it; then also what was the value of this property in the market after the railroad was located and constructed over it. If it was not worth as much afterwards as it was before, then that difference is the proper measure of damages. But if the property was worth as much after the railroad was constructed over it as it was before, that is, if the advantages by the construction of the railroad are such as will make this property as valuable in the market as it was before, the plaintiffs have sustained no damage. . . . . .

What do the witnesses say? Walter W. Balthaser, who was the first witness called, and is one of the plaintiffs, says that the damages are $12,000. And there was something said about the stone under the railroad.

Isaac H. Rahn was called, and he fixes the damages at $9,000. I have used the word damages, but that is the amount which the witnesses gave as the difference in the value of the land before and after the construction of the road. Mr. Rahn says that in making up that estimate of $9,000, he values the stone under the railroad at $4,000.

[The court then referred to the estimates of damage testified to by other witnesses on the part of the plaintiffs, embracing as an element the value of the stone under the railroad appropriation and proceeded:]

You see from this that in these various sums named as damages, there is a very great difference between the witnesses, ranging from $12,000 to $5,000 and $6,000.

The counsel for the defendant have asked the court to say that the jury cannot take into account this estimate of damages which the witnesses have put upon the stone under the road, and they have submitted a point, thus:

Charge of Court below.

1. The jury cannot place a value on the stone existing and being under the railroad, and which in consequence of the construction of the railroad cannot be removed, and allow the plaintiffs for such damages ; such portions of the estimates of the plaintiffs' witnesses as are based on that theory must therefore be disregarded by the jury.

The court answer this point thus : The jury will disregard the estimates made by the witnesses of the specific value of the limestone covered and being under the railroad, but the jury will consider that evidence so far as it affects the market value of the whole tract.[2]

So much, then, for the plaintiffs' witnesses. I may here state that all the witnesses that were examined upon the part of the plaintiffs, I believe, with the exception of Dr. Epler, the jury will know whether I am correct or not, have stated they could not see that the railroad was of any advantage to this property. Dr. Epler speaks somewhat differently in regard to that, and does regard the railroad as being of advantage to this property. You have heard in what manner he has testified in regard to it.

[The testimony of others of the defendant's witnesses was then reviewed.]

These, gentlemen, are the witnesses which have been called on both sides as I have named them to you. [You have been upon the property; and it is for you to say what is the difference in the market value of this property.][5] Whatever that difference is, if any, would be the proper measure of damages which the plaintiffs are entitled to recover ; and, on whatever sum you find, the plaintiffs are entitled to interest from May 23, 1885. Whatever sum you find due the plaintiffs you will add interest to and return your verdict for that amount. This is all it is necessary for the court to say to the jury.

The verdict of the jury was in favor of the plaintiffs for $8,040.64. Judgment having been entered, the defendant company took this writ, assigning for error :

1. The refusal to strike out the testimony of Walter W. Balthaser.[1]

2. The answer to the defendant's first point.[2]

3. The refusal to admit defendant's offer.[3]

4. The answer to the defendant's second point.[4]

5. The part of the charge embraced in [ ][5]

*Mr. Cyrus G. Derr* (with him *Mr. Isaac Hiester*), for the plaintiff in error :

1. When a railroad is constructed through mineral lands and the owner is obliged to leave a portion of the mineral underlying the railroad for surface support, it is error in estimating the damages to the land-owner to allow the value of the mineral left as part of his damages ; in such case as in others, the measure is the difference in market value, regard being had, however, to the fact that the lands are mineral lands ; any estimate whatever would be mere conjecture : Searle v. Railroad Co., 33 Pa. 64. The defendant sought protection from the injury in the improper evidence by its first point which consisted of two parts : (1) that the jury could not allow the value of the stone under the appropriation as damages; (2) that such portions of the estimates of plaintiffs' witnesses as were based thereon must be excluded. The answer related to the latter part of the point alone. When a question is distinctly proposed to the court, the party proposing it is entitled to a distinct answer : Smith v. Thompson, 2 S. & R. 51 ; Geiger v. Welsh, 1 R. 352 ; Slaymaker v. St. John, 5 W. 32 ; Tenbrooke v. Jahke, 77 Pa. 396.

2. Prior to the construction of defendant's road, the plaintiffs' property was connected with no main line of railroad. It was a manufacturing property ; all its products had to be transported to a distant market. The cost of transportation being such an important matter, the lessening of such cost was obviously a benefit, and the defendant's offer to show that since the opening of the road the rates of transportation had been reduced 23 cents per ton in consequence thereof was admissible : P. & L. E. R. Co. v. Robinson, 95 Pa. 432. In the language of the case cited : Any and everything connected with the general improvement, which tends to increase its value or usefulness to such property may be considered.

3. There are other quarrying properties in the vicinity of the plaintiffs' property ; this fact, however, does not deprive the defendant of the right to credit for such benefits as presented for consideration in the second point, yet the court in

the answer so said. The answer should have been in the affirmative, with a qualification excluding benefits which the plaintiffs share "with other members of the community whose property is not taken:" Pierce, Railroads, 223–4.

*Mr. C. H. Ruhl* (with him *Mr. Daniel Ermentrout* and *Mr. Adam B. Rieser*), for the defendants in error:

1. In many cases, as especially in this one, it would be impossible to arrive at a just valuation by a mere lumping estimate; the parts must be given which together constitute the whole. The plaintiffs could not be limited in their estimate of market value to considering the property as a farm and to be used for farming purposes only. They were entitled to show that about four acres of it was a deposit of valuable stone, and that more than one acre of these four was included in the appropriation and the market value depreciated accordingly: P., V. & C. R. Co. v. Rose, 74 Pa. 368; D., H. & W. R. Co. v. Gearhart, 81* Pa. 263; McTerren v. Railroad Co., 2 W. N. 41; S. & A. R. Co. v. Braham, 79 Pa. 453; West Penn. R. Co. v. Hill, 56 Pa. 464; P. & W. R. Co. v. Patterson, 107 Pa. 461. A careful consideration of Searle v. Railroad Co., 33 Pa. 64, proves it to be in harmony with the rulings of the court below.

2. We fail to see how the jury could have inferred from the language of the answer to the defendant's first point that they could place an independent value upon the stone. The court clearly instructed them to find from the evidence what, if any, the difference of the market values was, and to render a verdict accordingly. In P. S. V. R. Co. v. Keller, 20 W. N. 125, twelve of the plaintiff's witnesses were permitted to base their estimates of the market value of the plaintiff's property upon the profits he could have made out of his business, his property being an ice-plant; held not error.

3. The offer of evidence referred to in the third assignment of error, was an attempt to show a specific item of alleged advantage resulting two years after the road's completion. It has been held from Navigation Co. v. Thoburn, 7 S. & R. 411, down, that the damages are to be assessed as of the time when the injury was committed. Again; the offer lacked another essential element to render it admissible, permanency. The

rates may have been as stated at the time of the trial, but might be increased at any time by the defendant: West. Penn. R. Co. v. Hill, 56 Pa. 464.

4. The language of the answer to the defendant's point constituting the fourth assignment is the precise language of this court in a number of cases, one of which is Setzler v. Railroad Co., 112 Pa. 65.

OPINION, MR. JUSTICE GREEN:

We think the first assignment of error is sustained. The witness having stated that he made the difference in the value of the land before and after the building of the road to be $12,000, and being asked how he made up the items said: "They are made up by the stone which they take." Being further asked what he meant by the stone which they take, he said: "The land which it occupies has stone underneath, and it is occupied by the railroad, taken by this railroad." A motion was then made to strike out this testimony which was denied by the court, and exception was taken by the defendant. On cross-examination the witness explained that he had calculated how many tons of stone there were under the road, and he had put a value of so much per ton on it, and the result formed one of the elements of damage as he had calculated it. The meaning of this is that the witness's estimate of $12,000 damage was in part made up of a specific allowance for an estimated number of tons of limestone lying under the railroad, at a fixed price per ton. After the motion to strike out was refused, other witnesses were examined who testified that they had allowed the sum of $5,000 in their estimates as the value of the stone under the railroad. In this way the plaintiffs' testimony upon this subject was permitted to get into the case, and naturally may have affected the estimate of the jury in determining the damages.

It is almost unnecessary to argue the incompetency of that kind of testimony. Its character and effect were fully pointed out in the opinion of this court in the case of Searle v. The Lackawanna & Bloomsburg R. Co., 33 Pa. 64. We there held that the value of the land as coal land could be allowed, but not the value of the coal itself underneath the road. We said: "We do not measure the value of land by such facts. Land

may have $4,000 worth of coal per acre in it and yet sell at $40 per acre. When a man has to sell his property, of course he must take the market value for it." And so in this case the value of the plaintiffs' land as limestone land was a proper subject of consideration, both by the witnesses and the jury, in estimating the damages, but not the value of the stone under the road. Practically this distinction was disregarded when the objectionable testimony was retained and more of it given, and herein there was error. The doctrine of Searle v. The Railroad has never been departed from, nor is it likely to be. It is founded upon sound principles and practical common sense.

We think the defendant's first point should have been affirmed as it stood. The last sentence of the answer is somewhat misleading, because it does seem to sanction the idea that the value of the stone lying under the road might be considered in determining the market value of the whole tract. If that is so, it would be not only proper but necessary to admit that kind of testimony in every case in which mineral land is taken for a railroad. But the difficulty, indeed the impossibility, of proving the specific value of the mineral underneath the surface is just the same whether the object be to recover the value of the mineral itself, or to determine by means of that kind of proof, the value of the land. Hence it is that it should not be permitted for the one purpose or the other. The second assignment of error is sustained.

We think the offer of testimony covered by the third assignment was properly rejected. While it approximates very closely the rejected offers of testimony which we held ought to have been admitted in the case of Pittsburgh and Lake Erie Railroad Co. v. Robinson, 95 Pa. 426, and apparently does come within the general language of the opinion in that case, yet there is a difference which we think is material between the offers of testimony in that case and in this. The offer in this case was to show that rates of freight had been lowered between the points named since the opening of the road. If this were a continuing and permanent change not subject to alteration back to the rates which formerly prevailed, it would certainly be a specific advantage to the plaintiffs' property. But rates of transportation on railroads are fluctuating, and

subject to constant changes, and hence there can be no certainty that they will continue at any fixed figures. There was no offer to prove that the rates named in the offer we are considering would remain permanently, and we cannot assume it. We, therefore, think that specific rates prevalent at a particular time are not competent proof, while the fact that additional facilities for transportation are afforded, may be proved as an element of advantage. We think there is no merit in the fourth and fifth assignments and they are not sustained.

Judgment reversed, and new venire awarded.