# Minds *v.* Pennsylvania Railroad Company, Appellant.

*Railroads — Carriers — Discrimination — Transportation facilities — Sidings—Act of June 4, 1883, P. L. 72.*

1. A railroad company is not relieved from the duty of furnishing equal transportation facilities to a coal company by reason of unusual traffic conditions attendant upon a general coal strike.

2. A siding connection is a facility for transportation within the meaning of the Act of June 4, 1883, P. L. 72.

*Railroads—Discrimination—Measures of damages—Refusal of siding —Act of June 4, 1883, P. L. 72—Request for siding.*

3. In an action by a coal company against a railroad to recover damages under the Act of June 4, 1883, P. L. 72, for discrimination

in furnishing transportation facilities, the plaintiff is entitled to compensation for the injuries suffered and the jury have a right to take into consideration the difference between the mining cost and the fair average selling price in the mining region at the period of discrimination, though this is not necessarily and absolutely the measure of damages.

4. In such case when the discrimination alleged against the common carrier is the refusal of a siding, the loss on unmined coal, that is, coal which plaintiff was unreasonably prevented from mining by reason of the refusal of a siding, must necessarily enter into the consideration of the jury in determining the measure of damages.

5. In an action by two brothers as partners against a railroad company to recover damages for refusing to allow them a siding to their coal mine, the defendant cannot allege as a defense that the request for the siding was not made by plaintiffs, but by their father, if it appears that the father was acting for his sons, and that no one else could have brought the action, except the sons.

*Railroad companies—Carriers—Discrimination—Act of June 4, 1883, P. L. 72.*

6. The Act of June 4, 1883, P. L. 72, relating to discrimination by common carriers has not been repealed by either of the Acts of May 31, 1907, P. L. 352, and P. L. 354.

STEWART, J., dissents.

Argued April 20, 1910. Appeal, No. 398, Jan. T., 1909, by defendant, from judgment of C. P. Clearfield Co., Dec. T., 1906, No. 296, on verdict for plaintiffs in case of John H. Minds and William R. Minds, copartners, trading as the Chestnut Hill Coal Mining Company v. Pennsylvania Railroad Company. Before BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for discrimination in furnishing transportation facilities. Before SMITH, P. J.

The facts appear in the opinion of the Supreme Court.

*Errors assigned* were charge of the court and answers to points.

*Francis I. Gowen* and *Thomas H. Murray*, with them *James P. O'Laughlin* and *Hazard Alex. Murray*, for appellants.—The unusual conditions excused defendant

from putting in siding: Hoover v. Penna. R. R. Co., 156 Pa. 220; Thompson v. Penna. R. R. Co., 10 Interstate Commerce Reports, 640.

A siding connection is not a facility within meaning of act of 1883: Frostburg Mining Co. v. R. R. Co., 2 Am. & Eng. R. R. Cases (N. S.), 568; Southeastern Ry. Co. v. Ry. Commissioners, L. R. 6 Q. B. Div. 586; Atchison, etc., R. R. Co. v. R. R. Co., 110 U. S. 667 (4 Sup. Ct. Repr. 185).

The court erred in its instructions as to the measure of damages: McKnight v. Ratcliff, 44 Pa. 156; Clyde Coal Co. v. R. R. Co., 226 Pa. 391.

*David L. Krebs,* with him *A. M. Liveright, W. H. Moore* and *John H. Minds,* for appellee.—A mine owner has a right to siding connections: Olanta Coal Mining Co. v. Beech Creek Railroad Co., 144 Fed. Repr. 150; Little Rock, etc., Ry. Co. v. Oppenheimer, 43 S. W. Repr. 150; State v. Cove, 20 Mont. 468 (52 Pac. Repr. 200).

The measure of damages is stated in Hazleton Coal Co. v. Buck Mountain Coal Co., 57 Pa. 301; Wright v. B. & O. R. R. Co., 32 Pa. Superior Ct. 5; Wilson v. Wernwag, 217 Pa. 82.

OPINION BY MR. JUSTICE POTTER, July 1, 1910:

Relying upon the provisions of the Act of June 4, 1883, P. L. 72, the plaintiffs brought this action against the Pennsylvania Railroad Company, to recover damages for injuries alleged to have been sustained by them, because of unlawful discrimination practiced against them by the defendant. The discrimination charged was the refusal to build at plaintiffs' cost, and make connection with a siding to extend from the railroad to plaintiffs' coal mine. The only means of shipping coal from plaintiffs' mine was over the defendant's branch road, and in order that cars might reach the mine it was necessary that the siding should be built and connected with the railroad. It appears from the evidence that in July,

1901, James H. Minds, father of the plaintiffs, applied by letter to the superintendent of defendant's branch line, asking for the connection. After considerable correspondence an offer was made by defendant's representative, to build and connect the siding, provided a deposit of $1,200, to cover the cost thereof, was made with the company, and that certain conditions should be accepted by the applicants. These conditions were finally accepted, and a check for the required amount was sent. On October 17, 1902, the defendant company returned the check, and refused by letter to make the siding connection at that time. It was not until September, 1904, that the siding was constructed and connection made. This was more than three years after the date of the original application. The plaintiffs claim that by reason of the discrimination against them in refusing for more than three years to allow them a connection with the siding, they were unable to develop their mine, and market their coal during that time. Under the provisions of the act of 1883, they claim to recover treble damages for the injuries. thus sustained. The question of whether the refusal to grant the siding connection was an undue and unreasonable discrimination against the plaintiffs was submitted for the determination of the jury as a question of fact; as was also the question of the amount of the injury suffered or the loss sustained by plaintiffs as a consequence. The result of the trial was a verdict for plaintiffs for $4,000, single damages, or $12,000, treble damages.

The assignments of error are all to the charge of the court and the answers to points. Counsel for appellant contend in their argument that as the request for a siding was made by James H. Minds without disclosing the fact that he was acting as agent for his sons, the plaintiffs, the defendant company owed no duty to the latter. It appears, however, that in the requests made to the company for the siding connection, the mine for which the siding was desired and the place where the switch

was to be connected, were clearly designated. James H. Minds, the father, testified that he was acting for his sons, and it clearly appears that no one else than the sons could have brought this action, or were injured by the refusal of the siding. As the trial judge said, with reference to this matter: "The personnel of the applicants could not legitimately enter into the question of grant or refusal." This contention seems to us to be without merit. Counsel for appellant further suggest that during a portion of the period in question, from 1901 to 1904, owing to abnormal conditions for which it was not responsible, defendant was unable to move its traffic promptly, and felt obliged to suspend making new siding connections. These conditions were said to have been due to the anthracite coal strike, and defendant's witnesses testify that they existed from August, 1902, to May, 1903, a period of nine months. It will be noted, however, that the request for the siding was first made in July, 1901, more than a year before these conditions began, and the connection was not finally permitted to be made until September, 1904, more than a year after they had ended. We agree with the view expressed by the trial judge, when he said to the jury, "As a matter of law, however, we do not understand that even the existence of these unusual traffic conditions relieved the defendant company from the duty imposed upon it by the constitution and the law, to furnish equal facilities for transportation to all shippers who desired to make use of the lines. Because the plaintiffs were new shippers did not justify the defendant in refusing to give a switching connection. In this action it is also well to bear in mind that the original application for this siding on behalf of the plaintiffs was made by them nearly a year before the strike and before these unusual conditions arose. The railroad company have a right to impose conditions upon shippers, providing such conditions are imposed upon all proposing shippers. So, also, the manner or method and place for the connections must be de-

termined by the railroad company. But, as we understand the law, when any person having a sufficient amount of coal, and in good faith desires to develop that coal along the line of a railroad and asks for a siding or switch connection, which is the only method by which that product can be shipped economically and profitably, such proposing shipper has the right to demand that he be put upon the same footing with respect to his product as any other producer of a like product, under the same circumstances and conditions, in that locality. To our minds, therefore, it becomes a question for this jury as to whether, under all of this testimony, both on the part of the plaintiffs and on the part of defendant, there has been a case made out of unlawful and unjust, and, therefore, undue and unreasonable discrimination against these plaintiffs, and if you find there has been unjust and unfair treatment, amounting to an undue and unreasonable discrimination, against them, it is for the jury to determine as to when this unfair and unjust discrimination began."

It is also contended, on behalf of appellant, that a siding connection is not a facility for transportation within the meaning of the act of 1883. It would seem as though this suggestion could hardly have been made seriously. A facility is anything which promotes ease of performance. It is difficult to imagine a facility more commonly used and recognized as necessary in the transportation of coal from the mines, than the side tracks or switches upon which the railroad cars are loaded. In P. & L. E. R. R. Co. v. Robinson & Rea, 95 Pa. 426, it was held that the law was correctly embodied in a point which set forth "that the defendant company is a common carrier; that its railroad is a public highway; that the plaintiffs have a right in law to construct on their land, upon said railroad, a suitable switch for the uses of their business, and connect the same with the tracks of the defendant company, subject to the general rules of the said company regulating such connection; and that the defendant com

pany is bound to receive and deliver to and from such switch or siding, cars and freight for the said plaintiffs to and from such points, on the line of defendant's railroad, as may be designated by plaintiffs, and on equal terms with all other individuals and transportation companies." In this connection, it was said, in the body of the opinion by Mr. Justice GORDON, in the same case, "It is conceded that under our acts of assembly, the owners of mills and manufactories may of right connect their private sidings with the railroads in their vicinity." In the case of Olanta Coal Mining Co. v. Beech Creek R. R., 144 Fed. Repr. 150, which was a bill in equity to compel the railroad to permit switch connections with its line, to enable complainant to ship its coal to market, Judge BUFFINGTON said: "In mining, coal is carried from the mines in small cars and delivered to and carried by railroad companies in car load lots. To do this requires sidings on which the railroad's cars may be conveniently handled and filled. Such a connection the complainant asks, and is willing to bear the expense of making." And in that case a decree was awarded requiring the railroad to make the connection.

In the present case, in plaintiffs' fifth point, the rule for ascertaining the damages was thus stated: "The measure of the plaintiffs' damage is the difference between the cost of mining and delivering the coal on the railroad cars, adding thereto the royalty paid under the lease, and the fair average selling price prevailing in the region where their mine was situate, during the period extending from and after the time when the railroad company, by the use of reasonable diligence, could have placed the switching connection, to November 1, 1904, when this action was brought, upon all coal which the jury find from the evidence, that plaintiffs could and would have been reasonably able to mine and sell, except for the refusal of the defendants to grant the plaintiffs the siding or switching connections asked for." The trial judge answered as follows: "This point is affirmed, with what might be called a qualification. What the

law allows the plaintiffs for their injuries is compensation, and in order to get at that compensation you have a right, in the words of the point, to take into consideration the difference between the mining cost and the fair average selling price in the mining region at that period. But that is not necessarily and absolutely the measure of damages. You must in reaching the fair average price in the region also take into consideration all kinds and classes of coal, as I said to you before. As you heard testified here, there is what is called contract coal, and free or spot coal, and fuel supply coal. You might also classify railroad or fuel coals, whether furnished to the defendant railroad company or to other railroads. It would seem from this testimony that it is considered advantageous on the part of all operators to get railroad orders and to have contract coal, that is, in order that they may be better able during the year to advantageously operate their mines. We say to you, therefore, that it does not follow that, at least during a portion of the period claimed by these plaintiffs, when high prices prevailed, they were entitled to the high averages shown by any such figures. What the law contemplates is to give compensation and that is what you are to arrive at in the light of all these prices."

Under the circumstances of this case, we do not see how any better or fairer rule for the ascertainment of the damages could have been suggested or applied. Objection is made upon the part of appellant to estimating the loss upon unmined coal, but this objection is fairly met in that portion of the opinion of the trial judge in overruling the motion for a new trial, in which he said: "Where the discrimination alleged against the common carrier was the refusal of a siding, as here, if the contention of the defendant is correct, there could practically be no damages, and the railroad company would be safe at all times in illegally refusing sidings. Coal cannot be mined except by virtue of a siding. Unmined coal, that is, coal which plaintiff was unreasonably prevented from

mining by reason of the refusal of a siding, must nec-
essarily enter into the consideration of a jury in deter-
mining the measure of damages, which, as we instructed
the jury, was compensation only. We are wholly unable
to see how any other theory could be worked out. The
refusal of a siding is perhaps the most injurious form of
discrimination and if mined coal only could be considered
by the jury in estimating the compensation which should
be allowed for the offense of refusal, it would seem to us
that the law would provide a very inadequate remedy."

The question of the right of the plaintiffs to treble
damages depends upon whether the act of June 4, 1883,
has been repealed by either of the Acts of May 31, 1907,
P. L. 352, and P. L. 354. We have considered this ques-
tion, and disposed of it in the opinion handed down this
day in Jackson v. Pennsylvania Railroad, ante, p. 566, and
have there indicated our reasons for holding that the act of
1883 was not repealed by the acts of May 31, 1907, and
that all the statutes in question may stand as part of a
common purpose by the legislature, to make effectual the
mandate of the constitution against discrimination by com-
mon carriers. The act of 1883 provides a remedy for the
party injured; the later acts have no reference to parties
discriminated against, but provide in the interest of the
general public for proceedings at the instance of the
commonwealth, through the attorney general, for at-
tacking or restraining violations of the law in this re-
spect. They also make such violation of the law a penal
offense, punishable by a fine. The purposes of the dif-
ferent acts are not inconsistent, and we see no difficulty
in construing them so that they may stand together, each
for its appropriate purpose and use.

The assignments of error are overruled, and the judg-
ment is affirmed.

STEWART, J., dissents.