MONROE, J.,
— This condemnation case is before us on the condemnee’s motion for a new trial. The matter was tried before the undersigned on October 14, 15, 16 and 17, 1968, and resulted in an award to the condemnee in the amount of $43,000.[1]
The condemnation took place on December 14,1966. At that time, the condemnee was the owner of 1.1648 acres of land, or an area of 50,714 square feet, which was situated on the corner of the intersection of Route 309, known as Bethlehem Pike, and Derstine Road, this county. The land had a frontage of 221 feet on *787 Route 309 and a depth of 271 feet, which abutted upon Derstine Road. There were two buildings erected on the land: the larger of the two of these was approximately 100 feet in length and 45 feet in width while the other measured 72 feet long and 36 feet wide. The condemnee was engaged in the “rug business” on the premises, and each of the two buildings was utilized in this connection, the former primarily as a showroom and the latter as a warehouse. The area in question was of a commercial nature, although it was located in a somewhat rural section. There was no zoning ordinance in effect which applied to the subject property.
The taking consisted of 16,708 square feet of the condemnee’s land, and this was a portion of it which abutted upon the immediate comer of Derstine Road and Route 309, a strip 108 feet wide fronting on Route 309 and the full depth of 271 feet on Derstine Road and including therewithin the showroom building. This left the condemnee with 34,006 square feet of land along with the warehouse building situated upon it.
The condemnee presented two qualified expert witnesses to establish the amount of monetary damages sustained as a result of the condemnation. The first of these two individuals was a Mr. Welsh. He testified that he used a combination of the reproduction cost and comparable sales data approach in making his appraisal. It was his opinion that the before value of the subject property was $82,500 and the after value of it was $20,000, the difference between which provides a damage figure of $62,500.
The other qualified witness who testified for the condemnee was a Mr. Horn. He stated that he had considered all three methods of appraisal in making his determination, and these are the comparable sales, the reproduction cost less depreciation and the income approaches. Mr. Horn was of the opinion that the before *788 value of the subject property had been $80,000, the after value was $18,000 and that the damages sustained by the condemnee was, therefore, $62,000.
The condemnor presented one qualified expert, a Mr. Orbaker, in support of its position. He testified that he had used the comparable sales and reproduction cost approaches in reaching his appraisal determination. Mr. Orbaker was of the opinion that the before value of the subject property was $55,500, its after value was $17,100, leaving a damage figure of $38,400. On cross-examination, he stated that he had not considered any sales that had been affected by the imminence of condemnation as the basis for his valuation conclusion.
Because of this statement, i. e., that he did not consider any sales that had been affected by the imminence of condemnation, condemnee’s counsel moved that the testimony of Mr. Orbaker be stricken. The motion was refused.
Because we consider the condemnee’s statement of the “questions involved,” as set forth on page 3 of his brief presented to the court at oral argument on his motion for a new trial, to be somewhat of a departure from the formal reasons assigned in support of his reasons for new trial, we state those reasons verbatim. They are as follows:
“1. The amount of the jury award was grossly inadequate.
“2. The Court erred in refusing W. Herman Kehr, the condemnee’s, point for charge.[2]
*789 “3. The Court erred in not paraphrasing the Condemnee’s point for charge.
“4. The Court erred in refusing to permit inquiry by the Condemnee’s attorney as to whether the appraisers in determining their evaluation inquired into and considered the kind, type and volume of business conducted on the premises.
“5. The Court erred in permitting the testimony of Clifford Orbaker, the only appraiser for the Commonwealth, to be considered by the Jury when he admitted that he did not consider any sales affected by the eminent condemnation, but rather that he considered only sales made three and one-half years prior to the condemnation and the effective date thereof.
“6. The Court erred in refusing to comment to the Jury in its charge, on the admission of the Commonwealth’s appraiser that he did not take into consideration sales of property that were influenced by the eminence of condemnation and only considered sales three and one-half years before condemnation.”
Preliminarily, we wish to point out that there is factual inaccuracy in the fifth and sixth above-assigned reasons wherein it is stated that Mr. Orbaker considered only sales made three and one-half years prior to the condemnation (of condemnee’s property). An examination of Mr. Orbaker’s testimony discloses that he considered six sales which he believed to be comparable to the subject property, the most remote in time from the date of condemnation of subject property was a sale made three years and three months before the condemnation and the sale closest to the date of con *790 demnation was April 29, 1965, one year and eight months before the date of condemnation.
The first and fourth above-assigned reasons in support of the motion for new trial were not referred to in the condemnee’s oral argument nor in the brief submitted and we, therefore, consider them as having been abandoned. In any event, they are entirely without merit.
The determination of condemnee’s second, third, fifth and sixth reasons for a new trial is dependent upon whether or not section 604 of the Eminent Domain Code of June 22, 1964, P. L. (Spec. Sess.) 84, 26 PS §1-604, was properly interpreted and applied at the trial in the case at bar. The section provides that:
“Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value.”
The attorney for the condemnor was of the view, in substance, that the section applied to both general and specific benefits. The condemnor, in its offer of proof, proposed to establish a general enhancement in value of the subject property and other properties in the Quakertown and Sellersville area as the result of the imminence of the condemnation of properties for, and the construction of, a Route 309 by-pass around Sellersville, some considerable distance from the subject property, improvement and widening of Route 309 at some distances to the north and south of the subject property but not in front of the said property or in the immediate vicinity thereof and by the widening of Derstine Road as a feeder road to the Route 309 by *791 pass above mentioned. The condemnor intended and desired to introduce such evidence for the purpose of discrediting the opinions of the condemnee’s experts based on sales deemed to be comparable. Further, it was for this reason that the condemnor’s expert chose as comparable sales those that had taken place as long as three and one-half years before the condemnation. Condemnee objected to condemnor’s offer of proof. It was the position of counsel for the condemnee, at this stage of the trial, that by reason of section 604 of the Eminent Domain Code any change in the market value which is brought about by general knowledge of the imminence of condemnation cannot be shown, that only special benefits may be shown and no such benefit accrued to the subject property by virtue of the condemnation. The objection was sustained by the trial judge, who agreed with the interpretation which condemnee’s counsel had placed on section 604 of the Eminent Domain Code, and because it was obvious that it would be speculative as to whether the enhancement of values which the condemnor proposed to show were due to the highway improvements or to other factors having little or nothing to do with such improvements, or a combination of the two.
We agree with the interpretation which the trial judge and condemnee’s attorney placed upon section 604 of the Eminent Domain Code. That section appears to be a legislative expression of earlier case law. For instance, see Pittsburgh and Lake Erie Railroad Company v. Robinson and Rea, 95 Pa. 426 (1880), involving the assessment of damages for the taking of land by plaintiff railroad, wherein the Supreme Court said, page 432:
“It hence follows that while the general advantage, resulting as well to the public as to the property which *792 is the subject of assessment, is not to be considered in estimating the benefits to that property, yet any and everything connected with the general improvement, which tends to increase its value or usefulness to such property, may be considered.”
See also Pittsburgh, Bradford and Buffalo Railway Company v. McCloskey, 110 Pa. 436 (1895), also concerning damages for the taking of land, where the court said, at page 442:
“The general appreciation of property in the neighborhood, consequent to the projected construction of the road, cannot enter into the calculation; to this the landowner whose lands have been taken is as fairly entitled as is his neighbor, whose possession and enjoyment have not been disturbed. The general increase of values, resulting from the growth of public improvements, railroads, canals and highways, accrues to the public benefit, and in the computation of damages, the landowner cannot be charged therewith. The question, in each case, is whether or not the special facilities afforded by the improvement have advanced the market value of the property, beyond the mere general appreciation of property in the neighborhood: Pittsburgh & Lake Erie Co. v. Robinson, 14 Norris, 426.”
It is obvious that counsel for the condemnee wanted the trial court to take inconsistent positions, i. e., restrict the condemnor from showing and relating to the subject property an increase in market value resulting from a general knowledge of the imminence of condemnation of properties for improvements to Route 309 in order to discredit condemnee’s witnesses but give the condemnee a jury instruction benefiting the subject property by increase in value resulting from a general knowledge of the imminence of condemnation. The construction which the trial judge *793 placed upon section 604 required the refusal of condemnee’s point for charge and the paraphrasing thereof, the refusal of the motion to strike Mr. Orbaker’s testimony and the refusal to comment to the jury on Mr. Orbaker’s statement that he did not take into consideration sales of property which were influenced by the imminence of condemnation. Furthermore, upon another ground, the trial judge was entirely correct in his ruling complained of in condemnee’s second, third, fifth and sixth assigned reasons for a new trial, viz. there is no evidence in the case that the value of the subject property or any other property was affected by general knowledge of the imminence of condemnation of the subject property or any property for the improvement of Route 309 or Derstine Road. At page 267 of the trial transcript the following from the cross-examination of Mr. Orbaker appears:
“Q. There is no question in your mind, Mr. Orbaker, that the price of real estate has gone up in the last three and a half years prior to the date of condemnation?
“A. Real estate has increased in value each year for the last several years, and is still increasing.”
This falls far short of establishing an increase in real estate value resulting from general knowledge of the imminence of condemnation of real estate for any highway improvement in the area. Mr. Orbaker did testify that he did not consider as comparables a number of sales (identifying them) of properties which the condemnee’s experts had considered to be comparable to the subject property and among the reasons which he assigned for not considering them as comparable he stated to be the fact that the sales in question had been made after Route 309 had been widened from a two-lane to a four-lane highway *794 and after the Sellersville by-pass had been constructed. He attributed the enhancement in value of those properties to the completion of the improvement itself. He was entirely correct in disregarding those sales. “It is well known that after the bulldozers and the cement trucks move in to create their modern ‘ribbons of moonlight over the purple moor’ that the prices offered for fortuitously located lands rise spectacularly. This does not reflect the market value on the date of condemnation, for at that moment the economic catalyst has not begun to function. In fact, it is not yet in existence”: Anderson v. Department of Highways, 422 Pa. 1, 3 (1966).
We cannot say that the trial judge erred in refusing to strike Mr. Orbaker’s testimony because his damage valuations were based upon consideration of real estate sales, which he believed to be comparable, made as long as three years and three months prior to the condemnation of the subject property. The admissibility of evidence of this type is within the discretion of the trial judge and the question of remoteness generally goes to the weight of the evidence rather than to its competency: Gottus v. Allegheny County Redevelopment Authority, 425 Pa. 584, 590 (1967).[3]
ORDER
And now, March 26, 1971, condemnee’s motion for a new trial is denied and refused.

 The jury of view had granted a sum of $46,000 to the condemnee but the latter appealed the matter to this court.

 “The condemnor’s appraiser has not taken into consideration any sales that he says were affected by the imminence of condemnation.
“The condemnee, Kehr, is entitled to the general increase in property values which come about from the imminence of condemnation. To hold otherwise would be grossly unfair since the *789 condemnee Kehr would be deprived of a benefit which the general area will be enjoying.
“The time for determining fair market value is as of the date of the condemnation.”

 Condemnee’s counsel, in closing to the jury, argued that Mr. Orbaker’s opinion was not reliable because he relied upon sales made three and one-half years before the condemnation of the subject property and because he did not “consider any values which he feels are affected by the imminence of condemnation.”