# Searle *versus* The Lackawanna and Bloomsburg Railroad Company.

In estimating the damages that will be sustained by the construction of a railroad through the property of a landowner, the jury may allow the party the market value of the land taken, and all actual damages arising from the manner in which the road passes through the property and affects the improvements; but they are not at liberty to estimate the value of unopened mines beneath the surface.

And, although contingent disadvantages arising from the inconvenience that may be sustained, in future, in case of some possible use of the property, may be set off against the advantages to be derived from the construction of the road, they cannot be taken into consideration as a substantive claim for damages.

In valuing land taken for public use, the gross estimates of common life, the market prices, are all that courts and juries can use as measures of value; all other measures are necessarily arbitrary and fanciful.

In making roads over unopened mines, it is not a subject of damage that the owner will be thereby put to expense and inconvenience when he begins to work his mines.

[Searle *v.* The Lackawanna and Bloomsburg Railroad Co.]

ERROR to the Common Pleas of *Luzerne county*.

This was a proceeding under the Act of 19th February 1849, by Daniel Searle against The Lackawanna and Bloomsburg Railroad Company, for the assessment of the damages sustained by the construction of the defendants' road through the plaintiff's land.

The plaintiff was the owner of a tract of coal land, containing 91 acres 111 perches, situated on the feeder of the North Branch Canal, in the township of Pittston, Luzerne county. In 1855, the defendants, having first given security for the plaintiff's damages, constructed their railroad through the tract in question, taking a strip about 60 feet wide, and crossing it nearly at right angles, with an embankment of about four feet high, extending half way across the lot. The plaintiff's ground had been used for agricultural purposes, no mines having been opened on the land.

On the 17th May 1857, the plaintiff petitioned for the appointment of viewers to assess his damages, and subsequently appealed from their report.

On the trial of the appeal, the plaintiff, as one of the items of his damages, offered to prove that the tract in question was coal land, and that the defendants' railroad crossed it in such place and manner as materially to increase the expense of mining his coal. To this offer, the defendants objected, except as to its being coal land, on the ground that the damages claimed were speculative, which might never accrue; and that consequential damages were not recoverable. And the court below rejected the evidence, and sealed a bill of exceptions.

The plaintiff then offered to prove that at least one acre and 149 perches of coal, of the value of $4000, or thereabouts, underlying the tract of the railroad, must be left for its support, and was consequently wholly lost to the plaintiff. The court rejected the evidence, and sealed another bill of exceptions.

The plaintiff presented the following points, upon which he requested the court to charge the jury:—

1. Where the legislature provides a specific remedy for the recovery of damages for injuries sustained from a railroad company, the *statute*, and not the common law, remedy must be followed.

2. If in enjoying the plaintiff's land as coal land, it shall be found that the defendants have materially injured the property, by locating and building their railroad upon it, the plaintiff nevertheless can have no right of action hereafter for such injury.

3. A corporation duly chartered is not liable for consequential damages occasioned by the building of a highway, farther than is specifically provided by the law itself.

4. The defendants being incorporated under the general railroad law of the Commonwealth, are answerable in damages, direct or consequential upon the building of their road, to the plaintiff, only in the present action.

[Searle v. The Lackawanna and Bloomsburg Railroad Co.]

The court below (CONYNGHAM, P. J.) delivered the following charge to the jury:—

"It is not denied that under the charter of defendants, they have constructed a railroad, and if, by so doing, they have done injury to the plaintiff, for all injuries required to be compensated by the statute incorporating the company, he is entitled to recover here.

"In 1807, this tract of land was patented to Isaac Wilson; as whose property it was afterwards sold by the sheriff to Amzi Wilson; who, in 1826, conveyed the same to Daniel Searle, the plaintiff; who, by his tenants, has been in possession since that time. He has thus, in law, established a good title to the land, for injury to which he claims damage.

"Has the plaintiff then sustained damage by the laying out and construction of the road?

"The defendants have taken of his land nearly two acres, which they have fenced and enclosed; and for this he is entitled to receive the fair value, unless benefits by the road have accrued to him, which would overshadow or exceed it.

"What is the value of this land? We refer you to the testimony; this value has been given regarding it, both as agricultural and coal land. It is worth more for coal under the ground, than for the mere surface. The company, by taking the land, obtain no right to the coal; they cannot mine and carry it away; but so long as they choose to keep up their road, and occupy the land by it, they withhold the land from the owner, and without some other evidence than appears here, we do not see why the value of the land, as it is with the coal under it, estimated comparatively with the whole tract, is not the true subject for the consideration of the jury. There is nothing to show here, that the owner can take out any of that coal, without such risk of injury to the railroad, that the law would not permit him to do it.

"The true question or mode of valuation is, as most of the witnesses have given their estimates, valuing it by the acre, as the other land belonging to the plaintiff and forming the residue of the tract, of the same character and value, as land, is valued at.

"What then is the fair value of the property taken? This is for you to ascertain under the evidence.

"There is also another legitimate question or claim for damages —the manner in which the other land or the tract is cut up and divided by the railroad, and the inconveniences which a farmer of the tract may necessarily sustain by the crossing, going to, and coming from the back part of the property. This also has been estimated by witnesses, and is to be judged of by you.

"The amount of damages to which the plaintiff is entitled, are to be estimated as of the time of the completion of the road, and interest allowed on them to this time.

[Searle *v.* The Lackawanna and Bloomsburg Railroad Co.]

"A claim has been advanced here for alleged injury and difficulty, arising out of what may be called estimated mining rights and privileges. The court, heretofore, on the trial, rejected evidence of this kind, when offered as a distinct ground for claiming damages, to be compensated in money, to the plaintiff. The court then said that Mr. Searle, having no mining works in operation, no coal opened for mining purposes on his land, but his coal all being covered up by the superlying soil, and known to be there only by the judgment and examination of experts, was not so injured by the making of the road *herein*, that his injury could be considered capable of ascertainment now, and could be recovered here. The Supreme Court have said that remote, contingent, and speculative damages cannot here be claimed; and we repeat, while some evidence upon this subject came out in the explanations given by the witnesses of the grounds of their opinion as to the amount of injury to the property, and of the same character as that which the court rejected in chief, that these alleged difficulties and sources of injury to a mere estimated mining right, which may hereafter, or which may not ever be carried on, are not to be considered by you, in making up your estimate of any sum which you may think the plaintiff entitled to recover here."

The learned judge here read to the jury the points submitted by the plaintiff, and continued:—"We say that these points are, in the abstract, and substantially, correct; except that we qualify the last point by saying, there are some consequential damages, which arise from the *use* of the road hereafter, for which the company may be liable in other actions. If the point means to refer only to the damages, which have been made to appear in this case, depending only upon the *construction* and *building* of the road, the point is correctly stated.

"There is still, however, another subject of inquiry for the jury. The defendants admit that the land of the plaintiff has been taken for their road, and that, unless other circumstances be considered, the plaintiff could demand damages for so taking it. The act under which the defendants claim their charter requires that, in estimating the damages by the making of the road, a fair and just comparison of the advantages and disadvantages of the same to the owner of the land, is to be made. We read a portion of the 12th section, Act of February 1849, *Brightly's Purdon* 130, as far as it has relation to this question. The defendants say that the advantages of this road to Mr. Searle are greater than any damages which he has otherwise sustained. These advantages, and also disadvantages, other than those which, as proved here, we have instructed you to value in money, are, to a certain degree, prospective, contingent, and merely speculative. The railroad, perhaps, has not yet been of any direct benefit to Mr. Searle, except, it may be, in the increased value of land, which

[Searle *v.* The Lackawanna and Bloomsburg Railroad Co.]

he has not sold, but still holds, yet the defendants have the right now to ask you to consider this as an advantage to the plaintiff if you so find the fact to be. So we say to you that, in answer to the claim of advantages, the plaintiff may ask you to consider disadvantages, not capable of certain calculation, and to a considerable degree contingent and speculative. In a case like the present, where the defendants claim that the road is an advantage to the plaintiff on account of this tract being a coal tract, and therefore made more valuable in consequence of its ability to be mined and worked as such hereafter, by the road furnishing a means for the transportation of the coal (whether it will be so worked, or not, conceded to depend upon a contingency, yet its ability thereto, being an advantage, in consequence of presently increasing its value); if you find that the construction of the road, from the testimony of witnesses as to contingent damages, has injured the mode and previous opportunities of mining coal, and conveying the same to market by the canal, by opposing obstructions to the proper mode of reaching the canal; we do not see why you may not consider these disadvantages, contingent and indefinite as they are, in making a 'fair and just comparison' of the claim for advantages, arising from evidence of the same general character.

" You will understand, if in comparing these matters together, you find the contingent disadvantages equal to the claimed advantages, so far will be found an answer to the claim for advantages —if the contingent disadvantages exceed the advantages in your opinion, it will merely do away with such claim of the defendants, but will give no ground for substantive recovery of damages in money from the defendants. The evidence of these matters, which might have been proper as answering evidence, and which, as we have said, came out on the cross-examination of some of the witnesses, was rejected by the court, when brought forward as a ground for distinct damages—should the disadvantages exceed or equal the advantages, then the question of actual damages to the property upon the principles stated in the earlier part of the charge, will remain for your ascertainment.

" In a case like the present, where under the evidence given in the cause, the actual damage proved is to land taken for railroad purposes, and as the road is located over the farm of the plaintiff, when you come to ascertain the actual damages, and also to inquire into the attendant advantages and disadvantages, a proper rule for your government is thus laid down by our Supreme Court in the case of Railroad Co. *v.* Heister, 8 *Barr* 450:—' A fair and just comparison of the value of the tract through which the road passes, before and after the improvement is made. Is the property benefited or injured by the improvement? is a most material inquiry. If benefited, the owner neither is, nor ought

to be, entitled to recover any compensation whatever—if really injured, not a mere fanciful injury,' (and we add, not a mere supposed injury dependent upon a contingency or uncertainty, as already explained to you), 'compensation is to be given to the amount of the damages sustained by the owner. In coming to *your* conclusion, *you* may properly inquire what the property would sell for before and after the improvement is made and the road in successful operation'—always considering, too, where there are different improvements, whether this increase in value, if any be found, arises from the particular improvement in question, or from other causes."

To this charge the plaintiff excepted; and a verdict and judgment having been rendered for the plaintiff for $300, he removed the cause to this court, and here assigned for error: 1. The rejection of the evidence offered on the trial. 2. The charge of the court below.

*Harding* and *G. B. Nicholson*, for the plaintiff in error, cited Hummell's Case, 3 *Casey* 104–5; 6 *Wh.* 45, 115; Mifflin *v.* The Railroad Co., 4 *Harris* 194–5; The Monongahela Navigation Co. *v.* Coon, 6 *Barr* 379; Lee *v.* Milner, 1 *Eng. Railway Cas.* 607; Webb *v.* Manchester and Leeds Railway Co., *Id.* 439; McKinney *v.* Monongahela Navigation Co., 2 *Harris* 65; Detweiler *v.* Groff, 10 *Barr* 378; Livingston *v.* Cox, 8 *W. & S.* 61; Thoburn's Case, 7 *S. & R.* 411; Heister's Case, 8 *Barr* 450; Commonwealth *v.* Snyder, 2 *Watts* 418; 2 *Q. B.* 347; 10 *M. & W.* 425, 699; East and West India Docks and Birmingham Junction Railway Co. *v.* Gattke, 6 *Eng. Railway Cas.* 283; King *v.* Leeds and Selby Railroad Co., 1 *Id.* 592; Fenton *v.* Trent and Mersey Navigation Co., 2 *Id.* 612; Railroad Co. *v.* Gilson, 8 *Watts* 243.

*H. B. Wright, H. M. Hoyt,* and *S. Woodward,* for the defendants in error, cited Schuylkill Navigation Co. *v.* Thoburn, 7 *S. & R.* 411; 14 *Id.* 71; 6 *Wh.* 101; Schuylkill Navigation Co. *v.* Farr, 4 *W. & S.* 362; Hummell's Case, 3 *Casey* 104; Lazarus' Case, 4 *Id.* 205; Railroad Co. *v.* Heister, 8 *Barr* 445; Troy and Boston Railroad Co. *v.* Lee, 13 *Barb.* 171; Matter of F. Street, 17 *Wend.* 649; Canal Co. *v.* Archer, 9 *Gill & Johns.* 480; Parks *v.* Boston, 15 *Pick.* 198; Somerville Railroad Co. *v.* Doughty, 2 *Zab.* 495; Meacham *v.* Fitchburg Railroad, 4 *Cush.* 291; Upton and South Reading Railroad Co., 8 *Id.* 600; Albany N. Railroad Co. *v.* Lansing, 16 *Barb.* 69; Canandaigua and Niagara Railroad Co. *v.* Payne, *Id.* 273; Greenville and Columbia Railroad Co. *v.* Partlow, 5 *Rich.* 528; White *v.* Charlotte and South Carolina Railroad Co., 6 *Id.* 28; A. & S. Railroad Co. *v.* Carpenter, 14 *Ill.* 190; City of Cincinnati *v.* Symonds, 14 *Ohio* 147; Brown *v.* Cincinnati, *Id.* 541; McIntire *v.* State, 5 *Blackf.* 384; State

[Searle *v.* The Lackawanna and Bloomsburg Railroad Co.]

*v.* Digby, *Id.* 543; James River and Kanawha Co. *v.* Turner, 9 *Leigh* 313; Monongahela Nav. Co. *v.* Coons, 6 *W. & S.* 114; Henry *v.* Pittsburgh and Allegheny Bridge Co., 8 *Id.* 85; Mifflin *v.* Railroad Co., 4 *Harris* 193; Reitenbaugh *v.* Chester Valley Railroad Co., 9 *Id.* 100; Caledonia Railway *v.* Sprat, cited in *Redfield on Railways* 157; Philadelphia and Trenton Railroad Co., 6 *Wh.* 46; Commonwealth *v.* Fisher, 1 *Penn. R.* 467; *Redfield on Railways* 182; Blood *v.* Nashua and Lowell Railroad, 2 *Gray* 137; Zack *v.* Pennsylvania Railroad Co., 1 *Casey* 394.

The opinion of the court was delivered by

LOWRIE, C. J.—This case is very defectively presented in the plaintiff's paper-book, for it gives us no part of the evidence on which the cause was tried, and does not enable us to consider the rejected offers in their regular connection, or to compare the charge with the case before the court. We could not, therefore, consider the plaintiff's assignments of error here, were it not that his defects are supplied by the defendants' paper-book.

The claim is for damages for taking part of the plaintiff's land in making the defendants' road; and by the principles of the judge's charge, the jury were allowed to find a verdict for the value of the land taken, and for all the actual damages arising from the manner in which the road went through the plaintiff's land and affected his improvements; and to measure even imaginary and contingent damages against the probable advantages or facilities that the improvement might occasion. We cannot say that we discover any error in all this.

But the court rejected evidence that there was over an acre of coal under the road, worth $4000, which would be lost to the plaintiff, because necessary to be left for the support of the road.

Now if such a fact were necessary to the ascertainment of the value of the land taken, it would be wise to accept the testimony of experts, for we ought always to seek the best sources of information. The objection is not to the experts, but to the facts themselves. We do not measure the value of land by such facts. Land may have $4000 worth of coal per acre in it, and yet sell at $40 per acre.

When a man has to sell his property, of course he must take the market value for it. That is measured by the custom or common dealing of the country. If it is land, the market value is measured by the price usually given for such land in that neighbourhood, making due allowance for differences of position, soil, and improvement. Value may be very approximately estimated in that way, for it is not then founded upon the mere opinion of witnesses, but on the fact of a general market value.

When the state takes private property for public uses, or authorizes it to be taken, this market value is all that it pays for

[Searle *v.* The Lackawanna and Bloomsburg Railroad Co.]

it. This is the necessary measure, in order to avoid the favouritism or oppression that would attend any other measure. Every man holds his property subject to this eminent domain, dominion, or ownership of the whole society. He must give it up when society needs it, on being paid its value according to the estimate put on it in the market, that is, by common consent.

On the subject of taking land for public uses, the French have a very carefully prepared system in their law of 8 March 1810, *sur les expropriations pour cause d'utilité publique;* and it directs the market value to be ascertained by reference to recent actual sales in the neighbourhood, by the tax-lists and other documents, with the aid, if necessary, of experts, or persons whose business it is to deal in such values : Art. 16, 17.

In the present case, the jury were permitted to find in favour of the plaintiff the full value of the land, as coal land; though the defendant gets no title to the coal, further than it is needed to support the surface. Then the plaintiff has been allowed the full value of the land, as estimated by the common standard; and we do not see how we can take any other. The one here proposed has never been publicly sanctioned, and that is something against it. It would require us to ascertain the possible value of the products of the land, in order to get at the value of the land itself. But the products do not exist, and therefore have no value, for value here means value in money in the market, and this cannot apply to products not yet in existence. And then to use the products as a standard of value of the land, is to apply an uncertain measure in order to obtain a certain result. It is easier to value the land directly than thus.

Moreover, the offer impliedly requires a degree of refinement in the measure of values, which seems to us totally incompatible with the gross estimates of common life. Though we might have the most accurate calculation of the quantity of coal in the land, yet, without knowing exactly the expense of bringing it to the surface and carrying it to market, and the amount likely to be lost in mining and conveying, and the times in which it would be brought out, and the market prices at those times, the quantity would not help us to value the land. The gross estimates of common life are all that courts and juries have skill enough to use as a measure of value. All other measures are necessarily arbitrary and fanciful.

There was another offer, to show that the railroad of the defendants crosses the land in such place and manner as to materially increase the expense of mining the coal in the land.

We understand, from the opinion of the court below, that this means that, if at any future time the plaintiff shall undertake to mine the coal in his land, he will be put to great expense in getting it across the road for transportation to market; and for this he wants compensation.

[Searle *v.* The Lackawanna and Bloomsburg Railroad Co.]

There is no special allowance in the Act of Assembly for supposed injuries of this kind; and if the common law does not recognise them as injuries, we do not see how it is possible for the court to allow compensation on account of them. To ascertain the common law, let us see what is the usual mode of proceeding in such cases.

The state allows for all actual damages to existing improvements, especially in case of railroads; and that has been done here. But, so far as regards the unopened coal veins on this land, we may treat the case as one of wild lands. Over such, the state makes its roads, with simple reference to public convenience. It allows no damages on account of the fact that, when the owner comes to improve, he must go to great expense in adapting his improvements and his roads to the public road. It counts not at all on the minerals under the road; to do so, would obstruct all improvement of such land; and yet mineral lands must have roads, as well as other lands, and on similar terms. It cuts through high ground and fills up low, without allowing for the difficulty which the owner may some day have in getting at or over the road. It usually does the same, even through improved lands: 8 *W. & S.* 85; though it does not always permit railroad companies to do so: 16 *State R.* 191.

In relation to wild lands, such operations are no present injury, except in a purely imaginary sense. They may some day prove an obstruction; and yet it is impossible to tell what changes of roads and other avenues of communication, and what changes in the value of the land, and of its products, may take place before that day arrives; and it is impossible to decide now what the injury would then be, or that it would be any. It may be, that before this coal begins to be mined, the surface will be occupied by improvements needing this road, and presenting themselves greater obstructions to mining than the road is, because the mining must regard their safety: 12 *Q. B.* 739.

We cannot say that we discover any error in the case.

Judgment affirmed and record remitted.