CHARLES W. HOLLISTER *v.* WILLIAM J. COX,
HIGHWAY COMMISSIONER.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued November 21, 1944—decided January 11, 1945.

*Leo V. Gaffney,* with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellant (defendant).

*Robert P. Butler,* for the appellee (plaintiff).

JENNINGS, J. On November 26, 1941, the state condemned a strip of land belonging to the plaintiff in Mansfield and appraised his damages at $100. He appealed and had judgment for $2400. The appeal was heard by a state referee whose report as corrected discloses the following facts: The property taken was part of a sixty-acre farm owned by the plaintiff. It consisted of a strip of land bounded on the west for eleven hundred and thirty-six feet by the highway and had an average depth of between forty and fifty feet. It contained forty-eight hundredths of an acre. About five acres of the farm, bounding on the highway, were underlaid with a good quality of hard whitestone gravel suitable in its natural state for road building and other construction work. The plaintiff had used this tract as a gravel pit for some time. This was the normal and probable use to which the land should be put. The gravel was worth 25 cents per cubic yard. The premises were viewed. The value of the whole farm was diminished to the extent of $2400; the value of the land taken was $2400; and the plaintiff was entitled to damages in that sum.

The finding that the state appraised the land without regard to its gravel content has been eliminated from the foregoing statement as requested by the defendant. The evidence indicates that the appraisers testifying for the state did not regard the presence of gravel as substantially affecting the value of the land taken. This deletion from the finding does not materially affect the result. The evidence also shows that the use of the gravel in the construction of the road, another finding objected to by the defendant, was relevant and was considered only as bearing on the quality of the gravel.

The defendant sought to have a number of facts added to the report. These referred for the most part

to sales claimed by it to be comparable. These additions went merely to the weight of the evidence and if added would not change the result. *State* v. *Giant's Neck Land & Improvement Co.*, 118 Conn. 350, 354, 172 Atl. 861. Furthermore, they were evidential facts which had no place in the finding. Practice Book, § 360. There is credible evidence to support the report, and the subordinate facts support the conclusion. Information obtained by the view was evidence. *Heublein, Inc.* v. *Street Commissioners*, 109 Conn. 212, 218, 146 Atl. 20. The report must therefore stand unless there was error in the admission of testimony; Practice Book, § 173 (d); or unless the method used in arriving at the result was wrong. *Heublein, Inc.* v. *Street Commissioners*, supra; *Drouin* v. *Chelsea Silk Co.*, 122 Conn. 129, 132, 187 Atl. 904.

The rulings on evidence are not separately stated, as is desirable; see Practice Book, § 359, Form 645; *State* v. *Giant's Neck Land & Improvement Co.*, supra, 356; *Rogoff* v. *So. N. E. Contractors Supply Co., Inc.*, 129 Conn. 687, 689, 31 Atl. (2d) 29; and they do not in all instances contain the answers to the questions objected to. Where the answer to the question does not appear, the remonstrance on its face does not show the effect of the ruling and exceptions of this type are not considered.

The remaining rulings fall into two groups. The objections in the first group were to evidence as to the value of the particular portion of land taken and to the inclusion in the questions of the fact that the portion taken contained valuable gravel deposits. The rule relied on by the defendant is stated in 1 Nichols, Law of Eminent Domain (2d Ed.), § 226 as follows: "When a tract of land taken by eminent domain contains ore, stone, coal, sand, gravel, peat, loam, oil or gas or other valuable deposits, which constitute part

of the realty, or is covered with growing crops, or with trees capable of being converted into lumber, the existence of these features can be taken into consideration in determining the compensation so far as they affect the market value of the land; but the market value of the land remains the test, and there can be no recovery for any of the foregoing elements, valued separately as merchandise as items additional to the value of the land." Orgel in Valuation under Eminent Domain discusses the reason for this rule in § 164. He says in effect that to add the market value of the gravel or stone in place to the value of the land is oversimplification and too speculative in view of the numerous elements involved. To mention only two of them, there is the question of market and of cost of getting the material out. *Searle* v. *Lackawanna & Bloomsburg R. Co.*, 33 Pa. 57, 63, 64. As Nichols says, however, the fact that the land taken contains valuable deposits may and should be considered in determining its market value. The rule poses a difficult problem for the trier and for the attorney conducting the examination. The questions objected to were well within the rule and it is apparent from the colloquies between the referee and the attorneys that the rule laid down was followed. For example, the first question described the gravel bank in general terms and continued: "Taking into consideration that description and those factors and the knowledge that you gained from visiting it and inspecting the gravel and your knowledge of its quality and your knowledge of the market for that type of gravel, what in your opinion is a fair market value per acre of that gravel-bearing soil?" Neither this question nor the others objected to contained any requests for details as to the number of cubic yards of gravel or similar matters. They were properly framed.

The second group of questions concerned the admitted use of the gravel in the bank, both within and without the highway limits, on the highway. The questions were admitted solely for the purpose of reflecting the market value of the land, and again from the colloquies between counsel and the referee it is clear that the information obtained was used for no other purpose. The principal objection stated in the remonstrance was in substance that the referee was concerned rather with the value of the particular piece taken than with the difference in value of the whole tract before and after taking. *Stock* v. *Cox,* 125 Conn. 405, 418, 6 Atl. (2d) 346. The so-called "before and after" rule is one of the accepted methods of determining the total loss to the condemnee when he not only loses some land but suffers damage as to the portion he has left. The refinements and effects of the different methods employed for that purpose are discussed in Orgel, op. cit., § 47 et seq. It is not necessary to discuss them here. The condemnee is entitled to at least the fair market value of the land actually taken and, so long as no claim of resulting benefit to the remaining land is involved, it is not for the state to complain if he confines his claim to that value and asks nothing for damage to his remaining land. The farm, like most farms of this size and type, consisted of different kinds of land usable for different purposes and of different values. The principal appraiser for the defendant divided the sixteen acres most immediately affected by the taking into no less than seven categories. To put a simple case, if the state had taken all of the gravel-bearing five acres, the most practical method of ascertaining the loss in value, assuming that the plaintiff claimed no damage to his remaining property and the state did not claim that it was benefited, would be the value of this particular

five acres. *Appeal of Phillips,* 113 Conn. 40, 48, 154 Atl. 238. The fact that only half an acre was actually taken does not affect the result either theoretically or practically.

There is nothing in the record which indicates that the result was reached by means not recognized in law or that evidence was considered by the referee for any improper purpose. It follows that the conclusion reached by him and sustained by the trial court must stand.

There is no error.

In this opinion the other judges concurred.