No. 39,662

JAMES REITER and VIOLET REITER, his wife, *Appellees,* v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*

JAMES H. REITER and VIOLET REITER, his wife, et al., *Appellees,* v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*

(281 P. 2d 1080)

Opinion filed April 9, 1955.

W. B. Kirkpatrick, assistant attorney general, and Henry L. Daniels, of Topeka, argued the cause, and Clarence Paulsen, of Concordia, was with them on the briefs for the appellant.

Ralph H. Noah, and Don W. Noah, both of Beloit, argued the cause and Frank C. Baldwin, of Concordia, was with them on the briefs for the appellees and cross-appellants.

The opinion of the court was delivered by

Wertz, J.: Under two proceedings in eminent domain, the highway commission appropriated land for highway purposes. In one proceeding, James H. Reiter and other heirs of the Reiter estate are the owners of the northwest quarter of a section of land in Cloud county. The land taken by the highway commission amounted to approximately nineteen acres, consisting of a strip extending diagonally across the land. Under a part of this condemned land lay sand deposits of varying depths and quality. Not being satisfied with the award of the appraisers, the landowners appealed to the district court which approved a verdict of the jury for damages totaling $20,019.30.

In the second proceeding, James H. and Violet Reiter are the owners of the southeast quarter of a section of land in Cloud county, and that portion appropriated for highway purposes amounting to about seventeen acres, also extended diagonally across the quarter section. A part of this land condemned, likewise contained sand deposits. The landowners appeal from the award of the appraisers to the district court which approved a verdict of the jury for damages in the sum of $3,768.30. The two cases were consolidated for trial in the court below, and are so consolidated here on appeal.

From the judgments entered, the highway commission appeals to this court, asserting that the trial court erred in its ruling upon the admissibility of the evidence of plaintiffs' witnesses as to the value of the land taken, in overruling its timely motion to strike such testimony, and in overruling its motion for a new trial. From the judgment in the first proceeding, the landowners cross-appeal, alleging the trial court erred in excluding certain evidence of the landowners, and that their motion for a limited new trial should have been sustained. The landowners in the second suit, apparently being satisfied with the judgment entered by the trial court, have perfected no cross-appeal.

Plaintiffs Reiter in each case, appellees and cross-appellants herein, will be referred to as landowners. Defendant State Highway Commission, appellant herein, will be referred to as highway commission.

The primary question for our consideration is whether the trial court erred in permitting witnesses of the landowners to testify as to the value of the condemned land, predicated solely on the basis of the value of the sand deposits lying beneath the land.

The landowners' first witness, Mr. Hill, testified that he was an employee of the highway commission and was an engineer and geologist; that he had made soundings and borings along the right of way in question, and testified as to the quantity and quality of the sand underlying the condemned land, based upon these tests. At this juncture it may be stated that in reviewing the testimony we find there is ample, competent evidence that the use of the land in question was most adaptable and advantageous to the production of sand. Three of the remaining four witnesses testifying in behalf of the landowners had been engaged in the sand business for a number of years, and the fourth in the real estate business. On direct examination, each testified as to the value of the land appropriated by the highway commission for its most advantageous use. No useful purpose would be gained by setting forth the questions propounded to the witnesses and their answers thereto. Suffice it to say that on cross-examination, each of the mentioned witnesses testified that the valuation they placed on the land taken was based on the value of the sand. Three of the witnesses questioned as to the method of arriving at the valuation testified they computed the value upon the quantity of the sand under the land, as testified to by witness Hill, and the price they received for the

sand when they sold it. The fourth witness testified his valuation was computed upon the quantity of the sand under the land, as testified to by Mr. Hill, and the royalty paid in the past to the Reiter estate for the sand.

The highway commission made timely objection to the testimony of the plaintiffs' witnesses that they were not qualified to give an opinion as to the value of the land taken for its most adaptable use, and timely motions to strike the testimony of the respective witnesses for the reason that their method of valuation was not proper, and constituted a separate valuation of the sand under the land from the value of the land as a whole, all of which were overruled by the trial court.

In determining the market value of land appropriated, every legitimate use to which it may be applied and for which it is adapted, including that which is most advantageous and valuable, may be considered. (*Mai v. City of Garden City*, 177 Kan. 179, 277 P. 2d 636, and cases therein cited.) However, it is to be noted that the law states only that such advantageous use is to be considered, and it does not necessarily follow that evidence is admissible which evaluates the land solely on the basis of one particular element contained in the land, without reference to the value of the land as a whole, even though that particular element may be the one of most importance.

In *Saathoff v. State Highway Comm.*, 146 Kan. 465, 72 P. 2d 74, we said that where the land contained currant bushes and fruit trees, it was not proper to place a value on them separate from the value of the land. While it was proper to permit testimony as to how the land was improved, the improvements were a part of the real estate and were not to be valued separately.

Again, in *Glover v. State Highway Comm.*, 147 Kan. 279, 294, 295, 77 P. 2d 189, after noting that witnesses had been permitted to testify as to the valuation of trees located on the land appropriated for highway purposes, we stated such evidence should not have been received for the reason that it placed a value on the trees separate and apart from the value of the land as a whole; that the question being considered was the market value of the tract taken, and not the separate value of the trees. However, it was proper to show what was on the land in the way of trees, but since they were growing and were a part of the land, they should not have been valued separately from the land.

The rule is well stated in Orgel, Valuation Under Eminent Domain, p. 541, § 164, that the measure of compensation in quarry cases, as in other eminent domain cases, is the market value of the land, but that the stone deposits may be considered as bearing on the market value of the land. Accordingly, it is proper to admit evidence that the land contains valuable mineral deposits, such as sand in the instant case, but the award may not be reached by separately evaluating the land and the deposits.

In I Nichols, Eminent Domain (2d ed.) p. 692, § 226, it is stated:

"When a tract of land taken by eminent domain contains ore, stone, coal, sand, gravel, peat, loam, oil or gas or other valuable deposits, which constitute part of the realty, or is covered with growing crops, or with trees capable of being converted into lumber, the existence of these features can be taken into consideration in determining the compensation so far as they affect the market value of the land; *but the market value of the land as land remains the test*, and there can be no recovery for any of the foregoing elements, valued separately as merchandise as items additional to the value of the land." (Italics supplied.)

As stated in 18 Am. Jur. 878, § 242, when the land taken has valuable deposits of minerals, or contains sand, gravel, peat, or other materials of value, or is covered with growing crops, or trees capable of being converted into lumber, these circumstances may be considered so far as they affect the market value of the land; but part of the realty cannot be separately valued for its materials, as an item additional to the value of the land for the purpose of sale.

In 29 C. J. S. 1043, § 174, it is stated where the land taken contains minerals, the measure of compensation is the market value of the land with the minerals in it, and the value of the minerals cannot be shown separately.

The general rule is well stated in *United States v. Indian Creek Marble Co.*, 40 Fed. Supp. 811, 822:

"*Fixing just compensation for land taken by multiplying the number of cubic feet or yards or tons by a given price per unit has met with almost uniform disapproval of the courts.* This is true because such valuation involves all of the unknown and uncertain elements which enter into the operation of the business of producing and marketing the product. . . . It assumes a stable production cost and eliminates the risks all business men know attend the steps essential to the conduct of a manufacturing enterprise. It eliminates the possible competition of better materials of the same general description and of the possible substitution of other and more desirable materials produced or possible of production by man's ingenuity, even to the extent of rendering the involved material unmarketable. . . . True it is that quality and quantity have a place in the mind of the buyer and the seller, but the product

of these multiplied by a price per unit should be rejected as indicating market value when the willing seller meets the willing buyer, assuming both to be intelligent. Values fixed by witnesses on such a basis are practically worthless, and should not be accepted. To the extent the valuation fixed by any witness contains this speculative element, to the same extent is its value as evidence reduced." (Italics supplied.)

In *United States v. 5 Acres of Land, Etc.*, 50 Fed. Supp. 69, it was stated that one Edwards, the only real estate expert called by the defendant, predicated his opinion on value entirely upon profit factors of the sand and gravel, and not upon sales of similar properties containing sand and gravel deposits, and that such evidence should be rejected as an improper method of proof of value of the land containing the deposits.

In the instant case, the landowners contend the testimony was admissible as it had a direct bearing on the market value of the land. It is true that the sand deposits had a bearing on the market value of the land. The question for determination was the value of the land, not the value of the sand beneath the surface. It was proper to show the quantity and quality of the sand, and these elements could be considered in arriving at the value of the land as a whole. However, it was not proper to arrive at a value of the land being condemned by taking such quantity of sand and multiplying it either by a royalty rate per yard, or by multiplying such quantity by a price sand was currently bringing per yard. While it was shown by testimony of witnesses the ease of mining the sand, and that there was no sand of such quality and quantity located in the same county, it was not shown there was a ready market for such sand. Whether the sand would ever be mined and marketed was mere speculation. However, even were we to assume a ready market for the sand, it must be remembered that in condemnation proceedings, the question of determination is the value of the land as a whole, and valuations based upon some particular material contained within the land are not competent evidence of the value of the land as a whole. While it is true the owner of land taken by eminent domain proceedings is entitled to compensation for that of which he is being deprived, and to award less is unjust, it is equally unjust to cause the public to bear the cost based upon conjecture and speculation.

The landowners' cross-appeal is based upon the contention that they should have been allowed to testify to a specific royalty rate currently paid for sand in the particular area of the condemned land.

It is to be noted the court did, in effect, allow one witness to so testify. The landowner's testimony arrived at his valuation of the land solely by taking the quantity of sand under the land and multiplying it by a royalty rate currently paid to him on other land, although he was not allowed to testify to a specific price per ton. The jury was apprised of this information.

Following what has been previously said, the court erred in admission of this testimony, and the royalty rate should not have been admitted into evidence.

The appeal by the highway commission is sustained, and the cross-appeal by the landowners is denied. The judgments in both actions are reversed with directions to the trial court to grant a new trial in both cases.

It is so ordered.

SMITH, J., dissents.