ARK. STATE HIGHWAY COMMISSION *v.* COCHRAN.

5-1834                                                    327 S. W. 2d 733

Opinion Delivered September 21, 1959.

[Rehearing denied October 26, 1959]

*W. R. Thrasher, Dowell Anders & Wendell Hall,* for appellant.

*Ben M. McCray, Mehaffy, Smith & Williams* by: *R. Ben Allen,* for appellee.

GEORGE ROSE SMITH, J. This is a proceeding by the Highway Commission to condemn 2.038 acres of land, owned by the appellee Cochran. The parcel being condemned is part of a three-acre tract, all of which is subject to a mineral lease executed by Cochran to the other

appellee, Hogan & Company. The jury fixed the appellees' compensation at $10,140.00 for Cochran's ownership and $2,127.50 for Hogan's interest as lessee. The Commission contends that the verdicts are excessive and that erroneous rulings were made during the trial.

Cochran's mining lease to Hogan authorized the latter to remove from the three acres what is referred to as "select material," for which Cochran was to receive a royalty of ten cents a cubic yard. Select material is a porous sand that is used by Hogan and other road contractors in the construction of paved highways. Exploratory drilling upon the Cochran tract shows that select material exists to an average depth of twenty-one feet throughout the three acres. Upon this basis the appellees' witnesses estimated the total deposit as being 101,400 cubic yards, which at ten cents a yard would be worth $10,140.00 to Cochran. Since that is the exact amount of the verdict awarded to Cochran it is evident that the jury accepted the appellees' testimony as being true.

In the particular circumstances of this case the appellees' proof was competent. As a general rule the market value of a tract of land cannot be determined simply by estimating the amount of stone or other mineral that it contains and then multiplying that estimate by a fixed price per unit. Orgel, Valuation Under Eminent Domain (2d Ed.), § 165; *Hollister* v. *Cox,* 131 Conn. 523, 41 A. 2d 93, 156 A.L.R. 1412. But it has been correctly pointed out that such testimony should be received when, as here, the owner has already leased the property for a per yard rental. Winner, Rules of Evidence in Eminent Domain Cases, 13 Ark. L. Rev. 10, 20. Here there is testimony that Hogan would have mined and used the 101,400 yards of select material if Cochran had been allowed to keep the land. In view of this evidence the appellees' computations of value were admissible.

We do not regard this case as falling within the principle that a condemnor should not be required to pay an enhanced price which its demand alone has created.

See *United States* v. 620 *Acres of Land,* D. C. Ark., 101 F. Supp. 686; *Hoy* v. *Kansas Turnpike Authority,* 184 Kan. 70, 334 P. 2d 315. In the *Hoy* case, for example, the land being taken for highway purposes was underlaid with ordinary rock similar to that to be found within much of the entire eastern third of the state of Kansas. The court held that in the absence of any showing that a market existed for the rock the condemnor should not be charged an increased price simply because the highway construction project had created a limited demand for rock. In the case at bar it is shown that select material suitable for highway construction is hard to find and exists only in isolated spots. The lease between Cochran and Hogan was executed more than six months before this eminent domain proceeding was filed. No doubt Hogan intended to use the select material on the Little Rock-Benton highway, in connection with which Cochran's land is being taken; but the proof does not show that the value of Cochran's select material is attributable solely to the present construction project. To the contrary, the testimony indicates that a royalty of ten cents a yard is customarily paid to the owner of select material, wherever it may be found.

Upon another ground, however, we consider the award to Cochran to be excessive. The material underlying his entire three acres has a royalty value of $10,140.00; but the Commission is taking only 2.038 acres, which according to the appellees' method of calculation contain 69,047 cubic yards of select material, having a royalty value of $6,904.70. Although the appellees' proof indicates that it is not at present practical to mine the small parcel that is not being taken, we still cannot sustain Cochran's contention that he should therefore be awarded the royalty value of the select material in that untaken parcel. Cochran's home and workshop are situated on the land he is retaining, and obviously he could not keep those improvements if the property were excavated to a depth **of twenty-one feet. If** by any chance the value of the house and shop is less than the royalty value of the unminable select material Cochran has not met the burden of proving his net loss in that respect.

Nor can we sustain Cochran's suggestion that the jury might have found that the deposit of select material extends to a depth of thirty-five feet, so that there is a sufficient quantity in 2.038 acres to support the verdict. In the first place, there is nothing in the record to indicate that the layer of select material averages thirty-five feet in thickness; that is merely the maximum depth, with twenty-one feet being given as the average. Secondly, the appellees' witness Cobb, who alone testified about the maximum depth of thirty-five feet, admitted on cross-examination that the necessity of sloping the sides of the excavation offsets the fact that the select material extends at some points to a depth of more than twenty-one feet.

We conclude that the testimony as to the value of Cochran's ownership does not support an award in excess of $6,904.70, the figure we have mentioned. The judgment is affirmed in that amount on condition that a remittitur of the excess be entered within seventeen calendar days; otherwise the judgment will be reversed and the cause remanded for a new trial.

The Commission's contention that Hogan's verdict for $2,127.50 is excessive narrows down to an insistence that Hogan produced no competent evidence whatever to establish its loss. It may be observed at the outset that the mineral lease to Hogan conveyed an interest in the land, even though the lessee did not have title to the mineral itself. *Standard Oil Co. of Louisiana* v. *Oil Well Salvage Co.*, 170 Ark. 729, 281 S. W. 360; *Quality Coal Co.* v. *Guthrie*, 203 Ark. 433, 157 S. W. 2d 756; case note, 11 Ark. L. Rev. 186. The question is whether Hogan offered any admissible testimony about the worth of its interest.

As we have said, select material is not easy to find. It does not seem to have an established market price, as its value varies according to its proximity to road construction projects. In this instance Hogan had been awarded extensive road contracts and would have used the select material in the construction of the highway that Hogan had bound itself to build. It is shown with-

out contradiction that the nearest known alternative supply of select material is near Bauxite and would involve increased hauling costs amounting to $34,476.00. On this basis one of Hogan's witnesses testified that its interest in the Cochran lease had a market value of $34,476.00; but the jury, as we have seen, made an award of only $2,127.50.

We are of the opinion that the evidence is sufficient to support the verdict. The Commission offered no testimony to dispute Hogan's proof that the value of select material depends upon its nearness to a construction project, which manifestly implies that transportation costs are an important factor. It seems plain enough that the value of Hogan's leasehold interest depends to a large extent upon the comparative expense that would be involved if Hogan were compelled to find another source of material for the performance of its contracts. In a recent case we held that the cost of improvements made necessary by the taking of part of the landowner's property is a proper item for the jury's consideration, even though that cost is not itself the true measure of damages. *Ark. State Highway Comm.* v. *Speck,* 230 Ark. 712, 324 S. W. 2d 796. Here the ultimate question for the jury was the fair market value of Hogan's leasehold interest, and that issue was submitted to the jury through instructions that are not challenged. Even though increased transportation costs are not themselves the measure of damages in a case of this kind we regard such evidence as a proper aid to the jury in its effort to determine the market value of the lease.

The Commission also insists that the court erred in permitting the jury to return separate verdicts for the Cochran and Hogan interests in the land, but this contention was rejected in *Ark. State Highway Comm.* v. *Fox,* 230 Ark. 287, 322 S. W. 2d 81.

The judgment in favor of Hogan is affirmed.

HOLT and WARD, JJ., dissent.

PAUL WARD, Associate Justice, dissenting. After careful reflection I am forced to the conclusion that the major-

ity opinion is erroneous in several respects and that the rules of evidence sanctioned therein will probably rise up hereafter to haunt this court.

*As to Cochran.* The majority approved an award to Cochran in the amount of $6,904.70. The testimony on which this award was based and also the majority opinion itself show conclusively that it was arrived at by ascertaining the number of cubic yards contained in two acres of ground at an average depth of twenty-one feet and then multiplying that figure by ten (cents) — the price per yard. It is obvious, of course, that in order to arrive at the above number of cubic yards the walls of the gravel pit would have to be dug straight down — with a perpendicular bank — for the entire depth of the excavation, that is, twenty-one feet. This, of course, is just a plain physical impossibility.

Fortunately it is not necessary in this case to rely solely on the ''obvious'' for there is testimony in the record to support my contention of error. Two witnesses state in substance that it was impossible to excavate sand and gravel — or the materials here being considered — to a depth of twenty-one feet with perpendicular walls, but that it was necessary to excavate on a slope of one to one-and-one-half. By this method they arrive mathematically at much less than the 69,047 cubic yards as set forth in the majority opinion. Appellees' own witness stated in substance that you could not excavate with perpendicular sides because the material when wet would dissolve like sugar. I am, therefore, forced to the conclusion that there is no substantial evidence on which the jury could award Cochran ten cents per cubic yard for 69,047 cubic yards of select material.

Under these circumstances I would fall back on the old well-established rule that Cochran's damages in this case are the difference between the value of the property before the taking and the value after the taking. The only testimony introduced in the record of this nature was that of two of appellant's witnesses. The highest one placed Cochran's damages at $6,450.00 after taking into consideration the market value of the select material. Therefore,

I would affirm as to Cochran for the latter amount in the event of a remittitur.

Moreover, the best authority I have been able to find does not support the majority's method of determining damages — that is by multiplying cubic yards by a stated price per yard. See *Reiter* v. *State Highway Commission of Kansas,* 177 Kansas 683, 281 P. 2d 1080, where the trial court permitted the questioned evidence and the appellate court reversed, stating: " . . . the royalty rate should not have been admitted in evidence". Also, in the case of *United States ex rel. T.V.A.* v. *Indian Creek Marble Company,* 40 F. Supp. 811, it was said: "Fixing just compensation for land taken by multiplying the number of cubic feet or yards or tons by a given price per unit has met with almost uniform disapproval of the courts". The court further said: "It was not proper to arrive at a value of land being condemned by taking such quantity of sand and multiplying it either by a royalty rate per yard or by multiplying such quantity by a price sand was currently bringing per yard". The reason for rejecting the "royalty" rule is that it is based on speculation. It is well settled by our opinions that value must be fixed at the time of the taking by the State and it is impossible to tell exactly how many cubic yards of material will be utilized until it is extracted from the earth. That fact is well demonstrated in the case under consideration. Appellees' witness stated that part of Cochran's "pit" could not be used because of the presence of so much heavy equipment. Also, it could develop that some of the material would not be up to standard.

*As to Hogan.* The same reasoning which applies to the claim of Cochran applies to the case of Hogan. Moreover, if the testimony introduced by Hogan was proper and relevant then the jury should have brought in a verdict in favor of Hogan in the amount of $34,476.00, because the undisputed testimony establishes that amount. If appellee is sincerely in accord with the rule followed by the majority opinion, then it is hard to understand why it has not asked the trial court and this court for a directed verdict for that amount.

Again, Hogan's estimate of $34,476.00 is based on the fact that in hauling gravel from Bauxite rather than from the Cochran pit, it was forced to haul it an extra distance of about four miles. Let's examine this proposition. In the first place it is pure conjecture as to where the material from the Cochran pit would have been used. It must follow, therefore, that under this line of reasoning, Hogan's damages depended on where he used the material. Based on such reasoning, Hogan might have claimed that he had to haul it six or seven miles further and his damage would have been correspondingly larger. This proves conclusively again that Hogan's damages could not have been calculated (under the majority rule) at the time of the taking by the State.

It is interesting to note what apparent inequities might have resulted in this case under the majority rule. The record indicates that Cochran paid approximately $500.00 for the parcel of land in question only a few years before this litigation began. Under the testimony allowed to be introduced into this record the Highway Department could have been forced to pay more than $44,000.00 for the two-thirds of Cochran's property, and, as shown above, it might have been forced to pay even more. The record reflects that the State, under its contract, paid Hogan for hauling select material from Bauxite, and it shouldn't be forced to pay him for the same thing again.

I gather from the entire record that Hogan suffered no loss by reason of the taking of the said two acres of land. I do agree that my view would prevent him from making a handsome profit by virtue of his securing the lease from Cochran but I do not think the State should have to reimburse him for the loss of that kind of a paper profit.

Under the time tested before-and-after-taking rule, when the State paid Cochran the total market value of his two acres of land (including the select material) it paid for all the value the land possessed. Any rule that forces the State to pay more is wrong and impractical. Cochran didn't guarantee that Hogan could take any select material from his land, and Hogan knew he could take nothing if the State took the land. In other words, Hogan took a free

890

gamble on a neat profit at the State's expense and he should lose.

JUDGE HOLT joins in this dissent.