Fess, J.
Appellant assigns as error the admission of evidence prejudicial to him and over objection thereto in the following respects:
(1) In overruling appellant’s objection that the quarried waste stone on the hillside was personalty and to the inclusion of such stone as an element to be considered in determining the market value of the real estate.
*445 (2) In the admission of testimony as to the value of the land based upon the estimated quantity of quarried and unquarried sandstone under and upon the land taken and the assumption of a fixed price per unit. In other words, in permitting the witnesses- for the appellee to testify as to the value of such sandstone separately as merchandise and as items in addition to the market value of the land.
(3) In holding that the value of the culvert is to be based upon its “value to the appropriator” and in permitting the appellee ’s witness to' place a value upon it based on its reproduction cost less depreciation.
1. With respect to the contention of the appellant that the waste stone was personal property and not part of the real estate, the general rule is that, although minerals, when severed, become personalty, the byproducts or wastes under certain circumstances, such as are present in the instant case, will be regarded as an appurtenance to the land. Lacustrine Fertilizer Co. v. Lake Guano & Fertilizer Co., 82 N. Y., 476; Ellis v. Wren, 84 Ky., 254, 1 S. W., 440; Eggborn v. Smith, 114 Va., 745, 77 S. E., 593; Mathews Slate Co. of New York, Inc., v. Advance Industrial Supply Co., 185 App. Div., 74, 172 N. Y. Supp., 830; Beaver County v. South Utah Mines & Smelters, 17 F. (2d), 577; Foreman v. Beaverhead County, 117 Mont., 557, 161 P. (2d), 524.
2. With regard to the contention of the appellant that the court erred in receiving testimony as to the value of the sandstone as items separate from the value of the land taken as a whole, the record discloses that a principal witness for the appellee testified as follows:
“Q. I want to ask you if you have formed an opinion of the fair market value of this property, the whole of the prtiperty together, taking into consideration the stone upon and within the land, both quarried and unquarried, its quality, quantity, accessibility, value and marketability; the culvert, its size, design, quality, condition, adaptability to the land. Have you formed an opinion as to the fair market value of that whole thing before any taking by the state highway department? A. Yes, sir.
“Q. What is your opinion? A. $122,549.”
*446 Upon cross-examination of the witness it was brought out that in reaching his opinion as to the.fair market value, he had estimated the value of the bare land at $800, estimated 120,000 tons of unquarried stone at $24,000, estimated 88,000 tons of loose or quarried stone at $44,000 and estimated 455y2 feet of that portion of the culvert taken at $53,749, thus reaching a total of $122,549. A motion of the appellant to strike the testimony of the witness was overruled without comment by the court.
A similar pattern was employed in the examination of other experts on behalf of the appellee, i. e., they were first asked for their opinion as to the value of the property taken as a whole and then upon cross-examination gave figures upon the component parts, explaining how they reached the total figure.
The rule is widely prevalent in this country that the existence of mineral deposits in or on the land is to be considered in determining the market value of the land. 4 Nichols on Eminent Domain (3 Ed.), 408, Section 13.22. Cf. Tennessee Gas Transmission Co. v. Wolfe, 159 Ohio St., 391; Tennessee Gas Transmission Co. v. Blackford, 108 Ohio App., 19. But the value of such mineral deposits cannot be separately determined independent of the value of the land of which they are a part. Accordingly, it is proper to admit evidence that the land contains valuable mineral deposits, but the award may not be reached by separately evaluating the land and the deposits. 1 Orgel on Evaluation under Eminent Domain (2 Ed.), 672, Section 165; Searle v. Lackawanna & Bloomsburg Rd. Co. (1859), 33 Pa., 57; Reading & Pottsville R. Co. v. Balthaser (1888), 119 Pa., 472, 13 A., 294; Devon v. City of Cincinnati (1908), 162 F., 633; Orleans County Quarry Co. v. State (1916), 172 App. Div., 863, 159 N. Y. Supp., 30, 31; Ross v. Commissioners of Palisades Interstate Park (1917), 90 N. J. Law, 461, 101 A., 60; Forest Preserve District of Cook County v. Caraher (1921), 299 Ill., 11, 132 N. E., 211; Sparkill Realty Corp. v. State (1935), 268 N. Y., 192, 197 N. E., 192; United States, ex rel. Tennessee Valley Authority, v. Indian Creek Marble Co. (1941), 40 F. Supp., 811, 822; Strouds Creek & Muddlety Rd. Co. v. Herold (1947), 131 W. Va., 45, 45 S. E. (2d), 513; Nedrow v. Michigan-Wisconsin Pipe Line Co. (1953), 245 Iowa, 763, 61 N. W. (2d), 687; *447 Reiter v. State Highway Comm. (1955), 177 Kan., 683, 281 P. (2d), 1080; Gulf Interstate Gas Co. v. Garvin (Ky., 1957), 303 S. W. (2d), 260; State v. Noble, 6 Utah (2d), 40, 305 P. (2d), 495; 18 American Jurisprudence, 878, Section 242; 29 Corpus Juris Secundum, 1043, Eminent Domain, Section 174; 156 A. L. R., 1416.
There is respectable authority to' the contrary. Parker, C. J., in Cade v. United States (1954), 213 F. (2d), 138; Hand, J., in United States v. Glanat Realty Corp. (1960), 276 F. (2d), 264; State v. Mottman Mercantile Co., Inc. (1958), 51 Wash. (2d), 722, 321 P. (2d), 912; Arkansas State Highway Comm. v. Cochran (1959), 230 Ark., 881, 327 S. W. (2d), 733; Smithrock Quarry, Inc., v. State (Wash., 1962), 374 P. (2d), 168.
The underlying basis for rejecting evidence of the value of minerals separate and apart from the overall value of the land is that it involves an estimation of the future profits to be derived from the mining and marketing of such minerals. This is in accordance with the established principle in Ohio that evidence of damages by way of loss of profits is too speculative in character. Recovery for loss of profits has been consistently denied in Ohio, principally because of the uncertainty or speculative character of the probable profits in the particular case. 16 Ohio Jurisprudence (2d), 206, Damages, Section 74. None of the cases purport to deny absolutely the right to recover for loss of future profits, if proved with reasonable exactitude, but the courts look to the evidence to determine whether it is of such a character as to take the determination of damages out of the field of speculation. And it has been held that in appropriation -cases generally impairment of trade or business is too remote to be considered. 19 Ohio Jurisprudence (2d), 556, Eminent Domain, Section 134. -
Thus, in the opinion in Sowers, Supt., v. Schaeffer (1951), 155 Ohio St., 454, it is stated (p. 459) that “as a rule, profits from commercial businesses on premises cannot be shown in an appropriation proceeding for the reason that such profits are too speculative, depending as they do upon the acumen and skill of the one who carries on the business, but, assuredly, it is proper to show the kinds of businesses to which the premises are adaptable.” In that case the court did hold that in a land *448 appropriation proceeding where there are several different interests or estates in the property (residences), it is proper on direct examination to admit testimony as to the value of the individual structures, buildings and improvements on the property as well as the rental values thereof, the business conducted thereon and all special features relative to the property which may either enhance or lessen its value. But the court reversed the judgment for error in the charge of the trial court that the gross value of the property to be appropriated must be ascertained by computing the amount of damages to each of the several persons owning an interest in the tract, even though the aggregate of such values is more than the value of the tract as a whole.
In our per curiam opinion in Cleveland Boat Service, Inc., v. City of Cleveland, 165 Ohio St., 429, 136 N. E. (2d), 274, we stated that loss of profits by the plaintiff is too speculative and uncertain for accurate and satisfactory measurement, citing as authority therefor Sowers, Supt., v. Schaeffer, supra, 459, and 18 American Jurisprudence, 899, Section 259.
As remarked by the Supreme Court of Utah in State v. Tedesco et al., Trustees, 4 Utah (2d), 248, 291 P. (2d), 1028, “a condemnee is not entitled to realize a profit on his property. It must go to the condemnor for its fair market value, as is, irrespective of any claimed value based on an aggregate of values of individual lots in a subdivision which one hopes to sell at a future time to individuals rather than to an individual. The test is not what the lots will bring when and if 62 willing buyers come along, but what the tract, as a unit, and as is, platted or not, and in whatever state of completion, will bring from a willing buyer of the whole tract.”
Ordinarily, an inconsistency developed on cross-examination of a witness affects the credibility of his testimony in chief, and the weight thereof becomes a question for the jury. But, if, upon cross-examination of a witness who has expressed an opinion with respect to the value of land taken in an appropriation proceeding, it develops that his opinion as to the value of the land has been reached by adding to the value of the land as land an estimate of the value of quarried and unquarried stone and also the reproduction value less depreciation and *449 repairs of a portion of a culvert, on motion Ms testimony should, he stricken and the jury instructed to disregard it. Reiter v. State Highway Comm., supra (177 Kan., 683). See Ohio Edison Co. v. Public Utilities Commission, 173 Ohio St., 478, holding that the inability of an expert witness to give reasons for his opinion, when called upon to do so, may so affect the weight to be given his testimony that, even in the absence of evidence conflicting therewith, the trier of the facts may not be required to give any weight thereto. Determination of the question presented by the motion to strike the testimony is a question of law to be decided by the court, somewhat analogous to holding that testimony of witnesses that they did not hear any warning signals of a locomotive approaching a grade crossing has no probative value in establishing negligence of the railroad company, where such witnesses were not within a reasonable position to hear such warning signals or know whether they were given. Hicks, Admr., v. Baltimore & Ohio Rd. Co., 160 Ohio St., 307.
It is, therefore, concluded that the trial court erred in overruling the appellant’s motion to strike the testimony of the witness or in failing to instruct the jury incident to the overruling of the motion that it was not permissible for the witness to separately evaluate the separate components appurtenant to the land and add the total thereof to the value of the bare land as a basis for his opinion of the total value of the property taken.
3. Appellant asserts that the trial court determined that the value of the culvert is to be based upon its “value to the appropriator” and permitted the appellee’s witness to place a value upon such culvert based on its reproduction cost less depreciation. There is evidence that the highway department intended to use the culvert incident to the improvement of the highway. But on two separate occasions the court instructed the jury that, in considering the value of the culvert, it could not consider any value it might have to the state, “whether the state uses it or not makes no difference whatsoever.” This assignment of error, therefore, is not sustained.
But the court permitted a witness for the landowner to testify on direct examination that the culvert was worth *450 $90,000 for its reconstruction and, allowing $4,000 for cost of repairs that might be needed, was worth $86,000.
“Market value” means fair market value, and “fair market value” is the price which would be agreed upon at a voluntary sale by an owner willing to sell to a purchaser willing to buy. In other words, fair market value is what the land would bring, not upon a sale in the open market, either for cash or on long time payments, but when offered for sale in the usual manner, by one who desires, but is not obliged, to sell, and bought by one who is under no necessity of having it. 19 Ohio Jurisprudence (2d), 534, Eminent Domain, Section 117. Of course, any owner who is involuntarily deprived of his property by an appropriation proceeding should be accorded just and adequate compensation for his loss, but that does not mean that the appropriator should be penalized by requiring it to pay a greater sum than the true value of the property taken, considering all proper and pertinent factors (Ohio Turnpike Commission v. Ellis, 164 Ohio St., 377), nor is the condemnee entitled to realize a profit for his property. State v. Tedesco et al., Trustees, supra (4 Utah [2d], 248).
Evidence of reproduction cost less depreciation or repairs of a structure on the land taken does not meet this standard. Cf. Cleveland Boat Service, Inc., v. City of Cleveland, supra, holding that admission of actual replacement cost was inadmissible. As applied to the trial in the instant case, the admission of evidence of reproduction cost less depreciation or cost of repair of a substantial portion of a culvert included in the land taken, constructed many years ago incident to the operation of a stone quarry since abandoned, constitutes error prejudicial to the state. The court also committed prejudicial error in permitting the witness for the appellee to evaluate the culvert separate and apart from the land.
The evidence disclosed that it would take an indefinite period of some 20 to 30 years to remove and market the unquarried stone on the hillside.
In the general charge, the court instructed the jury as follows:
“The evidence is undisputed that if Stover Leslie had been allowed to exhaust the sandstone on their property, it *451 would have taken a number of years for them to have done so. In considering the amount you will allow to Stover Leslie as compensation for the property taken and as damages to the residue you may not allow them an amount based upon the sale of all the sandstone at one time, for money can earn more money by way of interest or other investment. In determining the amount of the award you must consider this earning power of money over the period of time you estimate it would have taken Stover Leslie to have exhausted the sandstone. Let me give you an example: I will use figures in round numbers and the figures I use are not intended to and do not have any bearing on the amount that you should return as your verdict.
“Suppose that it would take Stover Leslie ten years to exhaust that sandstone on their property. Suppose that their profit from this operation would be $1,000 a year. Of course, over a period of ten years at $1,000 a year they would earn a total of $10,000. Suppose they put that out at interest as they got it, that earning for their first year, say they bought a 4% bond; at the end of the first year they would buy this $1,000 bond and for nine years it would earn them 4% a year which, of course, is $40. At the end of the second year they bought another bond and that for eight years would earn $40 until the final figure. Now suppose they were paid $10,000 all at once and they bought a $10,000 4% bond. That bond, of course, would earn them $400 a year, times ten years, is much larger than the other figure.. That is something that you will have to consider but as I say, I repeat, that these figures are in no way a suggestion to you as to the amount you should determine in this case.”
In so charging the jury, the court permitted it to speculate as to the amount that might be realized by- the appellee from the sale of unquarried stone over an indefinite period in the future. The formula employed was not only confusing but would give the jury the idea that it could determine the present value of the stone separate and apart from the market value of the land. This constituted an error of commission and was prejudicial to the appellant.
It is, therefore, concluded that the judgments of the Court of Appeals and the Common Pleas Court should be reversed, *452 and the cause remanded to the Common Pleas Court for a new trial.

Judgment reversed.

Taft, C. J., Zimmerman, Matthias, 0 ’Neill and Gibson, JJ., concur'.
Herbert, J., dissents.
Eess, J., of the Sixth Appellate District, sitting by designation in the place and stead of Griffith, J.