ARK. STATE HIGHWAY COMMISSION *v.* FOX.

5-1792                                          322 S. W. 2d 81

Opinion delivered March 23, 1959.

*W. R. Thrasher* and *Bill Demmer,* for appellant.

*Yingling & Yingling,* for appellee.

JIM JOHNSON, Associate Justice. This appeal concerns a condemnation suit filed by the State Highway Commission on certain lands in White County for construction or reconstruction of a portion of U. S. Highway No. 67, northeast of the town of Bald Knob. The complaint was filed under authority of Act 419 of 1953.

The Declaration of Taking was filed under authority of Act 383 of 1953, and a deposit in the amount of $3,-000.00 was made by the appellant. The title to said lands vested immediately in the appellant. In this case the Highway Department condemned .302 of an acre of land which was taken from a tract belonging to appellees which contained after the taking approximately 2.9 acres. The premises belonging to appellees are operated as a cafe and service station, a motel, and also served as the home of appellees, C. E. and Katherine Fox. The premises in question are owned by C. E. and Katherine Fox. However, the Foxes had leased the service station portion of the premises to appellee, White River Petroleum Company, and the fixtures used in the operation of the service station belonged to White River Petroleum Company.

The cause came on for hearing in the Circuit Court of White County. A jury having been waived, the court heard the evidence to determine the amount of compensation to which the appellees, C. E. and Katherine Fox, and the White River Petroleum Company were entitled for the taking, and damages to their land and property interests for highway purposes. A decision was rendered in favor of appellees in the sum of $20,800.00; $16,000.00 to appellees, C. E. Fox and Katherine Fox; and $4,800.00 to appellee, White River Petroleum Company. Judgment was entered thereon and this appeal followed.

For reversal, appellant urged:

## I.

The appellee, landowner, having failed to place ANY competent evidence before the court pursuant to the proper method of determining "just compensation" the court erred in not directing a verdict in keeping with the evidence of just compensation presented by the plaintiff.

## II.

The verdict is excessive in that there is no substantial evidence to support the verdict.

## III.

The court committed reversible error in considering business profits in arriving at market value of the leasehold interest over the specific objection of the appellant.

## IV.

The court committed reversible error in considering as an element of damage to the leasehold interest the temporary business interruption in relocating the property.

This is a case of first impression before this court involving "just compensation" when there is a divided ownership in property in a condemnation suit. The appellant, relying upon the axiom that the whole cannot exceed the sum of its parts, insists that the separate interests of the lessor and the lessee should be disregarded, with the physical property being valued as if it were singly owned. We do not consider this axiom to be applicable here, for it is plain that a lease may be so advantageous to both parties that the combined market value of their separate estates exceeds what the land would be worth if the lease had not been made. Thus the "whole" of single ownership is not necessarily the "whole" of separate ownerships. We agree with Justice HOLMES, who, in rejecting the theory advanced by the appellant, said in *Boston Chamber of Commerce* v. *Boston*, 217 U. S. 189, 54 L. Ed. 725, 30 S. Ct. 459:

"The constitution does not require a disregard of the mode of ownership — of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is, what has the owner lost? not, what has the seeker gained?"

Since points one and two urged by the appellant have reference to the claim of the fee holders, appellees

C. E. Fox and Katherine Fox, we here consider them together.

The first witness for the appellant was Mr. Phillip J. Pointer, an appraiser for the State Highway Department. After qualification, Mr. Pointer testified that the fair market value of the land and improvements, prior to the taking, was $58,520.00, and arrived at the fair market value after the taking as being $49,520.00. Therefore, it is his contention that there is a difference of $9,000.00 between the before and after appraisal which represents the fair market value of the land taken and the damages that were incurred.

The next witness for appellant was Mr. Walker Watson, an appraiser for the State Highway Department. After qualification Mr. Watson testified that he considered a fair market value of the land and improvements prior to the taking to be $59,400.00, and the remaining value after the taking to be $49,150.00. The difference between the before and after value according to Mr. Watson would be $10,250.00.

The only witness testifying for the landowners as to the value of the property was Mr. John Q. Adams, a well qualified appraiser who had been familiar with the property for a number of years. Mr. Adams testified that the damage to the land and improvements was $20,350.00. However, he did not give a before and after figure as to the fair market value. On cross examination he testified as follows:

"Q. You didn't appraise it as a total, before and after?

"A. No, I had to put it together.

"Q. You didn't appraise it before and after?

"A. No, I appraised it at what it is today."

In fact the Court, when queried by appellant as to the rule used by him in arriving at his decision, testified as follows:

"Q. What was the before figure and the after figure?

"A. I am not going to answer that question.

"Q. All you did was find the damages?

"A. Yes, sir, in other words, I found the total amount of damages to be $20,800.00."

The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use without just compensation therefor. Ark. Const. Art. II, Section 22.

Unquestionably a landowner is entitled to be fully compensated for his loss under the processes of eminent domain, however we have established methods by which a determination of "just compensation" is to be made. In a situation as the case at bar where there is a partial taking of a landowner's property we have established the rule that the measure of damages is the difference between the value of the whole land before the appropriation and the value of the portion remaining after the appropriation. *Pulaski County* v. *Horton*, 224 Ark. 864, 276 S. W. 2d 706 (1955); *Herndon* v. *Pulaski County*, 196 Ark. 284, 117 S. W. 2d 1051 (1938); *Newport Levee District* v. *Price*, 148 Ark. 122, 229 S. W. 12 (1921).

In spelling out this rule we said in *Little Rock, Mississippi River and Texas Railway Co.* v. *Allen*, 41 Ark. 431 (1883):

"The correct rule for measuring damages is to determine the value of the whole land without the railway at the time same was built, then find the value of the portion remaining after the railway is built, and the difference between the two estimates will be the true compensation to which the party owning the land is entitled."

After a careful review of the record and the excellent briefs of the parties, we cannot say that this rule

has been followed in the case at bar. Therefore, we have reached the conclusion that there is no substantial evidence in this record that would support a judgment to the fee holders, C. E. Fox and Katherine Fox, his wife, for more than $10,250.00. We will sustain a judgment in this amount if, within fifteen judicial days, appellees C. E. Fox and Katherine Fox, will file a remittitur of $5,750.00. Otherwise, it will be reversed and remanded for a new trial. *Arkansas State Highway Commission* v. *P. W. Dupree*,. 228 Ark. 1032, 311 S. W. 2d 791.

Since points three and four urged by appellant have reference only to the claim of the leaseholder, appellee White River Petroleum Company, we here consider them together.

The leasehold interest in this action was created by a written instrument, dated October 22, 1956, under which lessors, C. E. Fox and Katherine Fox, leased the filling station site to Leland Cleghorn and Paul Bond. The original lessees later assigned the lease to White River Petroleum Company, hereinafter called the lessee. The lease was for a period of five years from November 10, 1956, and it is admitted that the lease was in full force and effect at the time of the order of taking and that the lease has no clauses therein which terminated the agreement in event of condemnation proceedings.

The leased property had been used as a filling station for twenty-five years prior to the current leasing on heavily traveled highway 67, and the lease involved is a renewal lease of an ealier lease, which had like rental provisions. The station was a conventional station in appearance, but had the outstanding advantage of being located at the junction of St. Louis and Memphis roads at Bald Knob. The lifts, filling station pumps, underground tanks and all equipment belonged to the lessee, who had the right to remove these items at the termination of the lease. The lessor received two cents a gallon on all fuel sold and it was provided that the lessee would collect one cent a gallon from the op-

erator. The rental paid to the landowner then is, in effect, a rental based on gross sales and is standard in the trade. The only covenant on the part of the lessee that required any expenditure of funds was covenant to paint station inside and outside every two years. There was no option to renew, and the lease would remain in effect from year to year if sixty days notice was not given prior to the termination of the five year period. All evidence as to the value of the leasehold assumed that the lease would terminate on November 10, 1961.

The fixtures involved in the taking are three pumps on a concrete pump island, a diesel pump which is located about forty feet from the other pumps, three underground storage tanks, a filling station lift which was embedded in concrete, and all connecting pipe lines from the tanks to the pumps.

The lessees are jobbers of gasoline products doing business in White, Jackson and Independence County. In the gasoline business a jobber, as distinguished from a commission agent, owns his own equipment, trucks and in effect is an independent business man. The jobbers own in many cases the leases on stations that sell their products. The original records of the lessee were introduced showing the number of gallons of gasoline and diesel fuel sold during the entire period of the lease. This shows an average of 13,000 gallons per month. This evidence was not introduced to show gross sales in dollars and cents, nor net profit, but was introduced to show, along with other evidence, that the leasehold was a very valuable asset. The gasoline that is sold at this station is trucked to the Bald Knob station from Conway, Arkansas, and the trucker services this station direct from the tank truck, so the gasoline involved in the Bald Knob station sales never enters the bulk plant of the lessee at Batesville for re-delivery.

Appellants introduced no testimony as to the value of the unexpired leasehold nor did it offer evidence as to the value of the fixtures involved. One of the appellants' witnesses had not seen the lease in question at

the time he made his appraisal, the other testified as follows:

"Q. Then the value of the unexpired term of the lease, if any, is placed at nil in your estimate of $10,200?

"A. I did consider the lease but I considered it at the value of the whole.

"Q. In arriving at that whole did you place any value at all on the lease in arriving at the whole?

"A. On the lease itself?

"Q. Yes, sir?

"A. No, I did not."

This lease had no clause which terminated the agreement in event of condemnation proceedings, *Capitol Monument Co.* v. *State Capitol Grounds Commission*, 220 Ark. 946, 251 S. W. 2d 473. There was substantial evidence introduced by appellees by competent witnesses relative to the fair market value of the lease over and above rental to support the following part of the decision of the trial court: "I think the value of his lease if he were to discontinue it, over and above the stipulated amount, would be approximately $3,800.00 to $4,000.00, which would be on the basis of $100.00 for thirty-eight months to run." However, when the court went further and allowed $1,000.00 damage to the equipment if the lease was discontinued or for relocating the equipment, we think it fell into error. We adopt the rule stated in *Springfield Southwestern Ry. Co.* v. *Schweitzer*, 173 Mo. App. 650, 158 S. W. 1058, wherein the court said: "The reasons for not allowing this damage are: 1. That the tenant would have to move anyhow, and this is one of the encumbrances attaching to the act of placing personal property on leased premises." Therefore, we have reached the conclusion that a judgment in favor of the leaseholder, appellee White River Petroleum Company, in the amount of $3,800.00 can be sustained. If, within 15 judicial days this appellee will file a remittitur of $1,000.00, the judgment

will be affirmed. Otherwise, it will be reversed and remanded for a new trial.

Mr. Justice McFADDIN dissents in part.

ED. F. McFADDIN, Associate Justice (dissenting).

The majority opinion, in holding that there would have to be a remittitur, says that the record contains no evidence on behalf of the landowners, C. E. Fox and Katherine Fox, for any amount greater than $10,250.00 and that there would have to be a remittitur by them of $5,750.00. As I read the record, the witness, John Q. Adams, definitely testified that the total amount of the damage was $20,350.00; and this was based on a "before and after figure as to the fair market value".

On Transcript 126 the following appears on re-direct examination:

"Q. You have stated the length of time which you have been personally acquainted with this property and its use. Notwithstanding the questions and answers as to specific items, is it still your statement that the difference in the market value of the property involved before and after the taking is $20,350.00?

A. It is."

Now, the question and answer above copied clearly show that the witness, John Q. Adams, based his figures on the "market value of the property involved before and after the taking".

With the foregoing evidence in the record, I submit that the Court should not require a remittitur.