No. 45,519

In the Matter of the Condemnation of Land for State Highway Purposes, THE STATE HIGHWAY COMMISSION OF KANSAS, *Appellee,* v. ZELIA HYDE MOORE and VINCENT E. MOORE, *Appellants.*

(464 P. 2d 188)

Opinion filed January 24, 1970.

*J. Ashford Manka,* of Wichita, argued the cause, and *Mark H. Adams, Charles E. Jones, William I. Robinson, Clifford L. Malone, Mark H. Adams,* II, *John S. Seeber, Floyd E. Jansen, Philip L. Bowman, Robert Hall* and *Donald W. Bostwick,* all of Wichita, and *Joe Rolston,* of Counsel, were with him on the brief for the appellants.

*John H. Morse,* Assistant Attorney General, argued the cause, and *Randolph G. Austin,* Assistant Attorney, and *William H. Dye,* of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This controversy stems from an appeal to the district court from the appraisers' award in a highway condemnation proceeding.

Although several tracts were involved, we are interested in only two parcels designated as tract 6 (1) and tracts 14 (*a*) and (*b*). A more detailed legal description would only tend to confuse.

As the two tracts involve different facts and different questions of law they will be treated separately.

Considering first tract 6 (1), the State Highway Commission took by condemnation a temporary easement for removal of borrow material on 12.91 acres in conjunction with State Highway K-69 in Sedgwick County. The tract was adjacent to but not on the highway right-of-way. The easement was to expire three years after the acceptance of the highway construction. It was anticipated that soil would be taken from ten acres of the tract to a depth of 10.8 feet, approximating 177,423 cubic yards. The soil to be taken did not differ materially from the other soil that was being used for agricultural purposes.

At a pretrial conference before the district court it was stipulated that the highest and best use of the land was agricultural and the court ruled that the compensation and measure of damages should be based on the difference in the market value of the entire unit immediately prior to the taking and the market value of the remainder immediately after the taking. Prior to the introduction of evidence before the jury the trial court stated:

". . . I'm going to hold the separate value of the land taken insofar as the value of cubic yards or cubic foot or a general replacement value of that land is not a proper measure of damages to be considered. The only value to be considered is the fair market value of the land before and after the taking."

The landowners being dissatisfied with the jury's allowance have appealed to this court. Their contention is stated as follows:

"The trial court erroneously refused to hold that the condemnation of Tract 6 (1) was a taking and removal of gravel, stone, sand or other material under K. S. A. 68-413 (a) (2) or of a borrow pit with right to sever and remove materials for use on a public improvement pursuant to K. S. A. 68-413 (a) (3) and that the correct measure of compensation was the fair market value of the gravel, stone, sand or other material or of the borrow pit; but, rather, held as a matter of law that the taking was of a temporary easement irrespective of the severance and removal of road building materials and the measure of compensation was the fair market value of the real property before and after the taking."

Simply stated the question is—what is the measure of compensation where land is taken under a temporary easement for the purpose of removing soil to raise a highway?

The appellants suggest:

"The first question presented by this appeal is whether the taking of Tract 6 (1) was the taking of an interest in land under K. S. A. 68-413 (a) (1) or was the taking of road construction materials or a borrow pit under K. S. A. 68-413 (a) (2) or (3). . . ."

The statute (K. S. A. 68-413) provides in part:

"(a) Subject to the limitations and conditions prescribed by subsection (b) of this section, the state highway commission, in the name of the state, may acquire title or an easement by purchase, dedication, or an easement by the exercise of the right of eminent domain: (1) To any lands or interests or rights therein; (2) to water, gravel, stone, sand or other material; (3) to spoil banks or to borrow pits necessary for the construction, reconstruction, improvement, maintenance or drainage of the state highway system; or (4) to rights of way giving access to spoil banks or borrow pits or any bed, pit, quarry or other place where gravel, stone, water or other material required in the construction, reconstruction, improvement, maintenance or drainage of the state highways may be located. . . .

"(b) (1) *The exercise of the right of eminent domain as herein authorized shall be in accordance with the provisions of sections* 1 to 16 [26-501 to 26-516], inclusive, of this act. . . ." (Emphasis supplied.)

We construe K. S. A. 68-413 (a) to be simply a designation of the various interests which the State Highway Commission may acquire by purchase, dedication or eminent domain. It does not designate the procedure for exercising the right of eminent domain. K. S. A. 68-413 (b) definitely states that the exercise of the right of eminent domain as authorized by K. S. A. 68-413 shall be in accordance with the provisions of K. S. A. 26-501 *et seq.* We must, therefore, look to those provisions for procedure and factors to be used in arriving at just compensation, regardless of the interest or the nature of the easement taken.

The measure of damages is provided in K. S. A. 26-513 which we quote in part:

"(c) *Partial taking.* If only a part of a tract of land or interest is taken, the compensation and measure of damages are the difference between the value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking.

"(d) *Factors to be considered.* In ascertaining the amount of compensation and damages as above defined, the following factors, without restriction because of enumeration, shall be given consideration if shown to exist but they are not to be considered as separate items of damages, but are to be considered only as they affect the total compensation and damages under the provisions of subsections (b) and (c) of this section:"

There follows a list of some 13 factors which, in the interest of space, we do not quote. It will be noted, however, that such factors are not to be considered as separate items of damages but are to be considered only as they affect the total compensation and damages.

We find no provision in the statute where compensation for taking

a temporary easement for a borrow pit or any other interest in land is to be differently determined.

The goal to be reached in all compensation cases is just compensation. It is also important that the measure be somewhat uniform in order that the parties, their attorneys and the courts know on what basis to proceed. Where only a part of a tract is taken the difference before and after the taking has generally been found to produce the most just and uniform method of calculating compensation.

Where the most advantageous use to which land is reasonably adaptable is for agriculture purposes, any stripping of the subsoil is going to destroy the land for such purpose. If the soil is taken to a depth of 10.8 feet, a landowner might receive more compensation on a price per cubic yard basis than on the difference in value before and after the taking. However, if the soil is taken to a depth of only 3 feet, the land might be completely destroyed for agricultural purposes, yet the landowner would receive small compensation on a price per cubic yard basis and he would desire compensation on the value of the entire tract before and after the taking.

Ordinarily there is no market for ordinary dirt. If there were, the value per cubic yard would be very speculative. However, if there is a market for ordinary dirt this factor might well be considered by an expert and presented to the jury as one of the factors in arriving at compensation. Nothing precluded the landowners' witnesses in this case from so testifying.

This court has not had occasion to pass on the specific question now before us. The decisions from other states without a statute similar to that in Kansas cannot be of too much assistance. It may be noted at least one state appears to measure the compensation for soil taken under eminent domain as the market value of the soil taken. (*Board of County Com'rs of Dona Ana Co. v. Vargas,* 76 N. M. 369, 415 P. 2d 57.) However, such measure has met with disapproval by most courts. In *Reiter v. State Highway Commission,* 177 Kan. 683, 281 P. 2d 1080, this court had under consideration the measure of value where land was condemned for right of way purposes under which lay sand and gravel deposits. In paragraphs 2 and 3 of the syllabus it was held:

"In condemnation proceedings, sand and gravel in the land are considered part of the realty and are not to be valued separate from the value of the land as a whole.

"In a highway condemnation proceeding in the district court, admission of evidence concerning value of sand deposits in the land taken, separate and apart from value of land, was error."

At page 687 of the opinion it was stated:

"The rule is well stated in Orgel, Valuation Under Eminent Domain, p. 541, § 164, that the measure of compensation in quarry cases, as in other eminent domain cases, is the market value of the land, but that the stone deposits may be considered as bearing on the market value of the land. Accordingly, it is proper to admit evidence that the land contains valuable mineral deposits, such as sand in the instant case, but the award may not be reached by separately evaluating the land and the deposits.

"In 1 Nichols, Eminent Domain (2d ed.) p. 692, § 226, it is stated:

" 'When a tract of land taken by eminent domain contains ore, stone, coal, sand, gravel, peat, loam, oil or gas or other valuable deposits, which constitute part of the realty, or is covered with growing crops, or with trees capable of being converted into lumber, the existence of these features can be taken into consideration in determining the compensation so far as they affect the market value of the land; *but the market value of the land as land remains the test*, and there can be no recovery for any of the foregoing elements, valued separately as merchandise as items additional to the value of the land.' (Italics supplied.)

"As stated in 18 Am. Jur. 878, § 242, when the land taken has valuable deposits of minerals, or contains sand, gravel, peat, or other materials of value, or is covered with growing crops, or trees capable of being converted into lumber, these circumstances may be considered so far as they affect the market value of the land; but part of the realty cannot be separately valued for its materials, as an item additional to the value of the land for the purpose of sale.

"In 29 C. J. S. 1043, § 174, it is stated where the land taken contains minerals, the measure of compensation is the market value of the land with the minerals in it, and the value of the minerals cannot be shown separately.

"The general rule is well stated in *United States v. Indian Creek Marble Co.*, 40 Fed. Supp. 811, 822:

" '*Fixing just compensation for land taken by multiplying the number of cubic feet or yards or tons by a given price per unit has met with almost uniform disapproval of the courts. . . .*' "

We are forced to conclude that the rule as above stated governs where ordinary soil is to be taken from a borrow pit condemned under a temporary easement.

The second contention raised by appellants pertains to a parcel of land designated as tracts 14 (*a*) and (*b*). This land had been taken in 1950 by the city of Wichita by condemnation proceedings describing the interest taken as—

"The right-of-way, easement and exclusive occupancy and possession forever of, through, over and upon the following tracts of land, and each of them, in Sedgwick County, Kansas, for the purpose of construction and

maintenance (through, over and upon the same) of works for the prevention, control or mitigation of flood or flood hazards upon or along the Arkansas River or the tributaries thereof, including (without limitation of the generality of the foregoing language) the digging and construction of channels for the passage or control of water, the construction of levees and control structures, and the right of subjacent support, to wit:"

In the condemnation proceedings the State Highway Commission condemned "a permanent easement for controlled access highway right-of-way and removal of borrow materials." The city of Wichita and the appellants were named as defendants having an interest in the tract. The tract was included in the landowner's appeal. There was no appeal by the city.

Before evidence was submitted the State Highway Commission moved for summary judgment dismissing the appeal as to tract 14 (*a*) and (*b*) on the grounds that the acreage having previously been condemned for flood control purposes, the landowners had no appealable or triable interest in the tract.

The trial court ruled:

". . . Motion for summary judgment is sustained as to 14 (*a*) and 14 (*b*). The landowner, Zelia Hyde Moore and Vincent E. Moore have no interest in that particular legally described real property which can be the subject of this action."

The landowners contend it was error to sustain the motion for summary judgment because they owned the reversionary interest subject only to flood control purposes and the issue of just compensation for the taking of such interest was a factual question.

The State Highway Commission states its position as follows:

"However, appellants neglect any consideration of the central issue in a condemnation appeal, which is the issue of just compensation. Assuming, arguendo, that appellant owned some sort of reversionary interest in Tracts 14 (*a*) and 14 (*b*), does that interest, without more, entitle them to compensation? To be entitled to compensation, *appellants must show they lost an interest of marketable value because of the highway condemnation.*" (Emphasis supplied.)

We are inclined to agree with the last two sentences of the above statement. However, the statement tends to support the landowner's contention. Before they could recover they must show they lost an interest of marketable value and what that value was. The sustaining of the motion for summary judgment denied them that opportunity.

It would serve no useful purpose to place in our reports another treatise on the use of summary judgments. It will suffice to say that this court has repeatedly held that before a motion for summary judgment may be sustained, it must be shown conclusively that there was no genuine issue of any material fact. See *Schneider v. Washington National Ins. Co.,* 200 Kan. 380, 437 P. 2d 798, and cases cited therein.

The landowners may not be able to show an interest with a marketable value as to tracts 14 (*a*) and (*b*) but the law gives them the right to try.

The judgment is affirmed as to tract 6 (1) and the judgment granting summary judgment and dismissing the appeal as to tracts 14 (*a*) and (*b*) is reversed.

APPROVED BY THE COURT.